**STATE of Missouri, Respondent,**

v.

**James CARTER, Appellant.**

**No. WD 65463.**

Missouri Court of Appeals,
Western District.

Sept. 5, 2006.

Rehearing Denied Oct. 31, 2006.

Mark E. Long, Assistant Attorney General, Jefferson City, MO, for respondent.

James Carter, Harrisonville, MO, pro se.

Before JOSEPH M. ELLIS, Presiding Judge, ROBERT ULRICH, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

James E. Carter, who appears *pro se*, appeals a judgment rendered by the Associate Division of the Circuit Court of Cass County in favor of the State of Missouri on the State's petition seeking recovery of delinquent Missouri individual income taxes owed by Carter for the tax years 1990, 1991, 1992, 1993, and 1994, as well as interest thereon.

Viewed in the light most favorable to the State, the evidence at trial established the following. Carter failed to file an income tax return with, or pay individual income tax to, the State of Missouri for the tax years 1990, 1991, 1992, 1993, and 1994. On July 8, 1998, the Missouri Department of Revenue ("DOR") issued to Carter five "Notices of Adjustment for Individual Income Taxes" in the following amounts for the following years: 1990—$802.65; 1991—$3,803.88; 1992—$1,609.75; 1993—$2,104.34; and 1994—$309.42. DOR also issued Carter a "Notice of Deficiency" for those unpaid income taxes on September 8, 1998. These notices were all received by Carter, who did not seek administrative review of DOR's actions or file any administrative action challenging the Notices of Adjustment or the Notice of Deficiency.

On April 26, 2004, the Prosecuting Attorney of Cass County filed, on behalf of the State of Missouri, a "Petition for Delinquent Missouri Individual Income Tax" against Carter in the Associate Division of the Circuit Court of Cass County. The petition sought the court's entry of a judgment against Carter for the delinquent Missouri individual income taxes Carter owed the State, plus interest. Associate Circuit Judge William B. Collins presided over the case, which was assigned case number CV 304–733AC.

On June 14, 2004, Judge Collins continued the matter to give Carter "an opportunity to talk to an attorney about [his] situation," but Carter never retained counsel and represented himself. On July 6, 2004, Carter filed a "Motion to Dismiss for Failure to State a Claim Upon Which Re-

lief Can Be Granted and for Failure to State a Cause of Action" with a supporting memorandum. On August 12, 2004, Carter filed a supplemental memorandum in support of his July 6, 2004 motion to dismiss for failure to state a claim, which Judge Collins denied by docket entry on August 30, 2004. On September 13, 2004, Carter filed his Answer to the State's petition, which also included an affirmative defense and a counterclaim against the State. A bench trial was held on September 23, 2004, during which the State adduced evidence that Carter owed the State of Missouri a total of $11,078.02 in back taxes and interest.[1] Carter adduced no evidence of his own and called no witnesses, although he did cross-examine the State's sole witness, a records custodian and office manager for DOR. The same day, the court entered a judgment in favor of the State in the amount of $11,078.02 and found in favor of the State on Carter's counterclaim and affirmative defense inasmuch as he adduced no evidence to support them.

On October 4, 2004, Carter apparently filed what Judge Collins' docket sheets refer to as a "Motion for Correction of the Docket" and an "Application for a Trial De Novo."[2]

The same day (October 4, 2004), Judge Collins certified the cause for assignment to another Cass County judge, evidently in response to Carter's "Application for a Trial De Novo." On October 13, 2004, the cause was received for assignment by Judge Joseph P. Dandurand, the Presiding Judge of the 17th Judicial Circuit, which includes Cass County. At this time, the case was given case number CV 304–733ACX. On October 14, 2004, Judge Dandurand assigned the case to Cass County Associate Circuit Judge Thomas M. Campbell, who subsequently issued a Notice of Assignment to the parties on October 18, 2004. On October 21, 2004, Carter filed, in case number CV 304–733ACX, a "Motion for New Trial and Second Motion to Dismiss for Failure to State a Cause of Action."

On November 15, 2004, Judge Campbell recused himself from any further proceedings due to the fact that he had lived next door to Carter for some twelve years and was personally acquainted with him, and certified the cause for reassignment to a different Cass County judge. On November 22, 2004, Judge Dandurand reassigned the case to himself. The following day, the State filed its response to Carter's "Application for a Trial De Novo," which is not contained in the record before us. After a hearing on January 10, 2005, Judge Dandurand made a docket entry stating that Carter's "application for trial de novo is denied for lack of jurisdiction." Although we have neither Carter's application nor the State's response before us, the transcript of this hearing reveals that Carter's "Application for a Trial De Novo" was based on his claim that section 512.180, RSMo Cum.Supp.2004, afforded him the statutory right to a trial de novo before another Cass County judge. During the hearing, Judge Dandurand explained that "[a] trial de novo is not recognizable in this case in the circuit court." Judge Dandurand also refused Carter's invitation to address the merits or otherwise rule on his "Motion for New Trial and Second Motion to Dismiss for Failure to State a Cause of

---

1. The bench trial was conducted "on the record" and Carter has furnished this court with a complete transcript of the trial proceedings, as well as transcripts of various pretrial hearings.

2. We say "apparently" because neither of these pleadings is contained in the legal file submitted by Carter.

Action," which Carter had filed on October 21, 2004.

On February 7, 2005, Carter filed, in case number CV 304–733ACX, a "Motion for New Trial and/or Third Motion to Dismiss for Failure to State a Cause of Action." [3] The same day, he filed his notice of appeal with the circuit clerk's office. According to this notice, Carter claimed he was appealing from: (1) Judge Collins' August 30, 2004 docket entry denying Carter's first motion to dismiss; (2) Judge Collins' adverse judgment of September 23, 2004; (3) Judge Dandurand's alleged denial of Carter's second motion to dismiss during the hearing on January 10, 2005; [4] (4) Judge Dandurand's docket entry of January 10, 2005 stating that Carter's October 4, 2004 "application for trial de novo is denied for lack of jurisdiction"; and (5) "Other issues including any adverse ruling on Motions filed with the Cass County court on February 7, 2005." [5]

On February 7, 2006, the State filed a motion seeking the dismissal of Carter's appeal, arguing that this court lacks jurisdiction to decide the appeal on its merits because Carter's notice of appeal was filed late and Carter also failed to request or obtain this court's special order permitting him to file a late notice of appeal pursuant to Rule 81.07(a). On March 3, 2006, Carter filed his response to the State's motion to dismiss his appeal. We took the State's motion with the case.

In his brief, Carter makes three main arguments: (1) that the trial court improperly denied his July 6, 2004 motion to dismiss for failure to state a claim; (2) that the introduction of certain records at trial concerning his federal tax liability was improper; and (3) that because he is questioning DOR's evidence, not collaterally attacking his tax liability, he did not have to follow the administrative review process to challenge DOR's actions.

■ At the outset, however, we must address the State's Motion to Dismiss the Appeal, which was taken with the case. Initially, we note that Carter's February 7, 2005 notice of appeal was wholly ineffective as a vehicle to attempt to appeal anything but the judgment entered by Judge Collins on September 23, 2004. This is because none of the other four judicial actions listed in the notice of appeal were ever denominated in writing as a "judgment," as required by Rule 74.01(a) and *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997).

Therefore, we focus our attention on the judgment rendered by Judge Collins on September 23, 2004. "Rule 81.04 is the rule of civil procedure which establishes when and how an appeal must be taken[.]" *In re Estate of Forhan*, 149 S.W.3d 537, 541 (Mo.App. S.D.2004). Rule 81.04(a) states:

> When an appeal is permitted by law from a trial court, a party may appeal from a judgment or order by filing with the clerk of the trial court a notice of appeal. No such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the

---

**3.** This motion was also never ruled one way or the other by any judge.

**4.** We say "alleged" because Judge Dandurand's docket entry of January 10, 2005 says absolutely nothing about Carter's October 21, 2004 "Motion for New Trial and Second Motion to Dismiss for Failure to State a Cause of Action."

**5.** The clerk of this court did not receive Carter's February 7, 2005 notice of appeal until the morning of May 18, 2005, when it was faxed to him by the Cass County circuit clerk's office with an explanation that it had not been sent earlier because they "did not realize" that Carter was intending to appeal.

judgment or order appealed from becomes final.

Therefore, in determining whether Carter's February 7, 2005 notice of appeal from Judge Collins' September 23, 2004 judgment was timely filed, we must first ascertain when that judgment became final. Rule 78.04 provides, in relevant part, that "[a]ny motion for new trial and any motion to amend the judgment or opinion shall be filed not later than thirty days after the entry of judgment." Rule 81.05(a) sets forth specific rules "[f]or the purpose of ascertaining the time within which an appeal may be taken." In particular, "[a] judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed." *Rule 81.05(a)(1).* If, however,

> a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following: (A) Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or (B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later.

*Rule 81.05(a)(2)* (original paragraph style omitted).

 "In determining whether a motion is an authorized after-trial motion, Missouri courts have looked not to the nomenclature employed by the parties, but to the actual relief requested in the motion." *Berger v. Cameron Mut. Ins. Co.*, 173 S.W.3d 639, 641 (Mo. banc 2005). In *Taylor v. United Parcel Service, Inc.*, 854 S.W.2d 390, 392 (Mo. banc 1993), the court held that a motion for a new trial is an authorized after-trial motion that is "directed toward errors of fact or law in the trial." Accordingly, regardless of the nomenclature employed by the parties, a motion that operates as a motion for a new trial in that it places before the trial court allegations of trial court error regarding contested legal or factual issues is an authorized after-trial motion. *Berger*, 173 S.W.3d at 641.

As noted *supra*, the record shows that on October 4, 2004, Carter apparently filed what Judge Collins' docket sheets refer to as a "Motion for Correction of the Docket" and an "Application for a Trial De Novo." Although our review is substantially hindered by Carter's failure to include them in his legal file, neither of these pleadings was an authorized after-trial motion, because neither of them appear to have placed before the trial court allegations of trial court error regarding contested legal or factual issues in the trial.[6]

 The record also shows that on October 21, 2004 (which was less than thirty days after September 23, 2004), Carter filed a motion for new trial. Although this motion was timely filed under Rule 78.04 and was also an authorized after-trial motion, it was never ruled one way or the other. Accordingly, Judge Collins' September 23, 2004 judgment became final ninety days from October 21, 2004—which was January 19, 2005. *Rule*

---

**6.** To the contrary, Carter's "Application for a Trial De Novo" was apparently based on section 512.180, RSMo Cum.Supp.2004, which, when applicable, does not require any showing of error on the part of the associate circuit judge but affords the applicant the *unconditional, automatic* right to a trial de novo before another judge (often a circuit judge). *See Hloben v. Henry*, 660 S.W.2d 431, 432 (Mo.

App. E.D.1983) ("[I]t is important conceptually to recognize that § 512.180.1 cases do not involve an 'appeal' to the circuit court but rather, the right to an automatic new trial of the entire case."); *McElroy v. Westin Hotel Co.*, 976 S.W.2d 41, 43 (Mo.App. W.D.1998) ("[A] trial de novo is not an appeal, although the two terms are often used interchangeably in the case law.").

*81.05(a)(2)(A)*. Therefore, under Rule 81.04(a), Carter had until January 29, 2005 to file his notice of appeal. However, as January 29, 2005 was a Saturday, Carter's notice of appeal was actually due no later than Monday, January 31, 2005. *Rule 44.01(a)*. Since Carter's notice of appeal was filed a week later, on February 7, 2005, it was untimely.

■ However, "Rule 81.07(a) establishes a process for obtaining a special order permitting a late notice of appeal." *Berger*, 173 S.W.3d at 640. In pertinent part, the rule provides that:

> The special order may be allowed by the appellate court only upon motion with notice to the adverse parties filed within six months from the date of final judgment, and only upon a showing by affidavit, or otherwise, that the delay was not due to appellant's culpable negligence.

*Rule 81.07(a)*.

> The intent of Rule 81.07 is to provide a six-month grace period "from the date of final judgment" within which an appellate court may permit a late filing of a notice of appeal. To give meaning to the word "final" as used in Rule 81.07, it must mean the period prescribed by Rule 81.05 within which a judgment becomes a final judgment.

*Lavelock v. Cooper Tire & Rubber Co.*, 169 S.W.3d 865, 866 n. 1 (Mo. banc 2005). Moreover, "[t]he six month time period within which a prospective appellant can seek a special order cannot be enlarged." *Berger*, 173 S.W.3d at 640; *see also Frankoviglia v. Centerre Bank of Branson*, 791 S.W.2d 7, 9 (Mo.App. S.D.1990) ("The authority of this court to grant leave to file a late notice of appeal [under Rule 81.07(a)] can be exercised only if a motion for the same is filed within six months from the date of final judgment.").

As noted *supra*, under Rule 81.05(a)(2)(A), Judge Collins' judgment became final on January 19, 2005. Although Carter could have filed a motion under Rule 81.07(a) at any time during the six-month period specified by that rule, which ended on July 19, 2005, the record shows that he did not. In fact, the record shows that Carter has never filed a motion or any other pleading in this court seeking a special order under Rule 81.07(a) at any time. Therefore, we agree with the State that Rule 81.07(a) has no application in this case. *See, e.g., Foster v. State*, 590 S.W.2d 912, 913–14 (Mo. banc 1979) (where notice of appeal was filed more than ten days after judgment became final and appellant did not apply to the appropriate appellate court for a special order which would have allowed him to file a late notice of appeal under Rule 81.07(a), appellate court had no jurisdiction to consider the appeal and it had to be dismissed); *Matter of Smith*, 840 S.W.2d 268, 271 (Mo.App. E.D.1992) (appellate court had no jurisdiction where notice of appeal was filed more than ten days after judgment became final, appellants did not request leave to file notice of appeal out of time under Rule 81.07(a), and the six months within which to make such a request had expired and could not be enlarged); *Plummer v. Fountains Rest., Inc.*, 521 S.W.2d 506, 507 (Mo.App. S.D. 1975) (same holding as in *Foster*).

■■ "An indispensable prerequisite to appellate jurisdiction and a vital step for perfecting an appeal is the timely filing of a notice of appeal." *State ex rel. Blackwell v. Elrod*, 604 S.W.2d 768, 769 (Mo.App. E.D.1980); *see also Telge v. Telge*, 677 S.W.2d 403, 406 (Mo.App. W.D.1984); *Essner v. Reynolds*, 621 S.W.2d 551, 553 (Mo. App. S.D.1981). "If a notice of appeal is untimely, the appellate court is without jurisdiction and must dismiss the appeal." *In re Marriage of Short*, 847 S.W.2d 158, 161 (Mo.App. S.D.1993) (internal citation

omitted); *see also Forhan,* 149 S.W.3d at 542 (internal citation omitted) ("In the absence of a timely-filed notice of appeal, we have no appellate jurisdiction . . . [and the] appeal must be dismissed."); *Berger,* 173 S.W.3d at 640 ("Timely filing of a notice of appeal is jurisdictional.").

Nothing in Carter's suggestions in opposition to the State's motion to dismiss his appeal convinces us to hold otherwise. First, he argues that "[t]he filing of an Application for Trial De Nova on 10/04/04 in the Associate Circuit Court of Judge Collins was in the nature of an Appeal," thereby giving Carter forty days from the date of Judge Dandurand's docket entry of January 10, 2005 to file his notice of appeal. The contention is without merit because: (1) the docket entry was not an appealable final judgment; and (2) Carter's application for a trial de novo was not an appeal, but a request for a trial de novo before a different Cass County judge as of right.

■■■ Next, Carter contends that because section 512.180 is "convoluted," "vague and nebulous," and "has resulted in voluminous appellate reviews that attempted to decipher what the statute establishes," he "was denied clear knowledge of an acceptable method of appeal from the judgment of Judge Collins," particularly since he was proceeding as a *pro se* litigant. "While we recognize the problems faced by *pro se* litigants, this court cannot relax its standards merely because one is a non-lawyer; this is not due to lack of sympathy, but rather it is necessitated by the requirement of judicial impartiality, judicial economy, and fairness to all parties." *State v. Watkins,* 102 S.W.3d 570, 571 (Mo. App. S.D.2003). Therefore, "we are not permitted to hold *pro se* litigants to a different standard than those who have benefit of counsel." *In the Interest of T.C.T.,* 165 S.W.3d 529, 532 (Mo.App. W.D. 2005).

■■■ Carter further claims that when Judge Dandurand assigned case number CV 304–733ACX to Judge Campbell on October 14, 2004, it "removed jurisdiction from the associate circuit court to the circuit court" and "tolled any timeline of the Associate Circuit Court judgment." In support of this claim, Carter cites Rule 78.06, which states, in its entirety:

Any motion for new trial, motion to amend the judgment or opinion, or motion for judgment notwithstanding the verdict is overruled for all purposes if the trial court does not rule on it within ninety days after the date the last such timely motion is filed.

In computing the ninety days, no day shall be counted during which the court lacks power to act because of an order of a superior state court or because of removal of the action.

Relying on the second sentence of Rule 78.06, Carter argues that because the case was "removed" from the Associate Division on October 14, 2004, the 90–day period referred to in the first sentence of Rule 78.06 was tolled until January 10, 2005, when Judge Dandurand made a docket entry stating that Carter's October 4, 2004 "application for trial de novo is denied for lack of jurisdiction."

First, Carter cites no authority for the proposition that Rule 78.06 tolls the running of the 90–day period referred to in the much more specific Rule 81.05(a)(2), which, as noted *supra,* states (emphasis added, original paragraph style omitted):

If a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following: (A) *Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled;* or (B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty

days after entry of judgment, whichever is later.

Second, Carter's argument overlooks the fact that his October 21, 2004 "Motion for New Trial and Second Motion to Dismiss for Failure to State a Cause of Action," which, as noted *supra*, was the only authorized after-trial motion timely filed by him, was *not* filed in the Associate Division (case number CV 304–733AC), but in a circuit division (case number CV 304–733ACX). Therefore, even if he was correct that Rule 78.06 trumps Rule 81.05(a)(2)(A) with regard to the 90–day period referred to therein, the running of that period would not be tolled pursuant to Rule 78.06 because, unlike the associate circuit, the circuit court could not be said to have "lack[ed] power to act" on Carter's October 21, 2004 motion for new trial "because of an order of a superior state court or because of removal of the action."

■ Third, even assuming, *arguendo*, that "removal" correctly describes what happened in this case,[7] the argument would still fail. This is because under the circumstances here, Judge Collins lacked the authority to certify the cause to Judge Dandurand for assignment to another Cass County judge in the first place.

Section 512.180 governs the review of certain cases originally tried before an associate circuit judge. *State ex rel. Anderson v. Nixon*, 158 S.W.3d 306, 308 (Mo.App. W.D.2005). In particular, section 512.180, RSMo Cum.Supp.2004, provides:

1. Any person aggrieved by a judgment in a civil case tried without a jury before an associate circuit judge, other than an associate circuit judge sitting in the probate division or who has been assigned to hear the case on the record under procedures applicable before circuit judges, shall have the right of a trial de novo in all cases tried before municipal court or under the provisions of chapters 482, 534, and 535, RSMo.[8]

2. In all other contested civil cases tried with or without a jury before an associate circuit judge or on assignment under such procedures applicable before

---

7. Carter cites no cases discussing the meaning of the phrase "removal of the action" as used in Rule 78.06, and we have been unable to find any either. Rule 51.02 provides: "If at least thirty days before the trial date of a civil action triable by jury the parties shall file a stipulation agreeing upon removal of the civil action to a designated court of competent jurisdiction, the court shall order it removed to such other court." Likewise, the phrase "removal of causes" is often used to describe a situation where, before trial or final hearing thereof, a civil cause of action is transferred from a state court to a United States District Court under 28 U.S.C.A. § 1441 *et seq.* BLACK'S LAW DICTIONARY 1296 (6th ed.1990); *see also Rule 55.34(a)* (governing situations where "a case removed to federal court is remanded to a court of this state."); *Rule 51.05(f)* (governing situations where, after a change of judge has been granted, the action is "removed on application of another party to some other county in the same circuit."). However, these are obviously not the types of "removal" envisioned

by Rule 78.06, which, as noted *supra,* clearly refers to after-trial events. Black's Law Dictionary does tend to support Carter's argument, though, because it also defines "removal of causes" as follows: "The transfer of a cause from one court to another, *e.g.* from one state court to another, or from state court to federal court. Commonly used of the transfer of the jurisdiction and cognizance of an action commenced but not finally determined, with all further proceedings therein, from one trial court to another trial court." *Id.; see also* BLACK'S LAW DICTIONARY 1459 (rev. 4th ed.1968) (defining an "order of removal" as "[a]n order made by the court *a qua,* directing the transfer of a cause therein depending, with all future proceedings in such cause, to another court."). Be that as it may, we need not decide this issue to resolve the jurisdictional question before us.

8. Chapter 482 relates to small claims actions, while chapter 534 pertains to actions for forcible entry and unlawful detainer and chapter 535 relates to landlord-tenant actions.

circuit judges or in any misdemeanor case or county ordinance violation case a record shall be kept, and any person aggrieved by a judgment rendered in any such case may have an appeal upon that record to the appropriate appellate court. At the discretion of the judge, but in compliance with the rules of the supreme court, the record may be a stenographic record or one made by the utilization of electronic, magnetic, or mechanical sound or video recording devices.

Section 512.180.1 clearly did not afford Carter the right to a trial de novo, as his case was not "tried before municipal court or under the provisions of chapters 482, 534, [or] 535, RSMo." [9] Moreover, it is readily apparent that this was a contested civil case tried without a jury before an associate circuit judge in which a proper record of all trial and pretrial proceedings was fully and properly preserved, either by stenographic record via a court reporter or by transcription using a sound recording device. Therefore, Carter was only entitled to take "an appeal upon that record to the appropriate appellate court" under section 512.180.2.

Since he plainly had no statutory authority to do so on the basis of the record before him, Judge Collins acted in excess of his jurisdiction in certifying the cause to Judge Dandurand for assignment to another Cass County judge. Therefore, the purported certification was itself a nullity, see generally Drey v. State Tax Comm'n, 345 S.W.2d 228, 235–36 (Mo.1961); Hughes v. Neely, 332 S.W.2d 1, 11 (Mo.1960),[10] and Carter's tolling argument must be rejected.

To summarize, a timely notice of appeal was necessary to vest this court with jurisdiction to entertain Carter's appeal. Berger, 173 S.W.3d at 640; Goldberg v. Mos, 631 S.W.2d 342, 345 (Mo.1982). Carter's notice was untimely, and he also failed to obtain or even to timely request this court's special order permitting him to file a late notice of appeal pursuant to Rule 81.07(a). "An appeal without statutory sanction confers no authority upon an appellate court except to enter an order dismissing the appeal." Davis v. Oaks, 942 S.W.2d 464, 467 (Mo.App. W.D.1997) (internal quotation marks omitted); McElroy, 976 S.W.2d at 44 (internal quotation marks omitted). Accordingly, the State's motion to dismiss Carter's appeal is sustained and the appeal is dismissed.

All concur.

---

9. As noted supra, this case was filed directly in the Associate Division of the Circuit Court of Cass County. Therefore, Judge Collins was not "assigned to hear the case on the record under procedures applicable before circuit judges" within the meaning of section 512.180.1. Nor was Judge Collins sitting in the probate division.

10. For this reason, Judge Dandurand was entirely correct in ruling that he had no jurisdiction to entertain Carter's facially invalid application for a trial de novo.