In The ESTATE OF Laura B. DOWNS, Deceased; James L. Rutter, Personal Representative, Respondent,

v.

Eldon BUGG, Appellant.

No. WD 73316.

Missouri Court of Appeals, Western District.

Sept. 27, 2011.

Eldon Bugg, Appellant pro se.

Jean E. Goldstein, Columbia, MO, for respondent.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

Eldon Bugg ("Bugg") appeals from the trial court's judgment approving a Statement of Account, entering an Order of Complete Settlement, and discharging the Personal Representative. Bugg contends that the trial court erred in: (1) not disqualifying trial court judge, Deborah Daniels ("Judge Daniels"), because Bugg timely filed an application for disqualification; and (2) overruling Bugg's objections to the attorney's fees reflected in the Statement of Account because the fees were injurious to the estate of Laura Downs ("Estate"). We affirm.

**Factual and Procedural History**

This matter involves the administration and closure of the Estate. The Estate has evolved through a lengthy, litigious history, which we summarize here.[1] In 1991, Bugg, although not an attorney, drafted a durable power of attorney for Laura Downs ("Downs"), an elderly woman he met through church. During that same year, Bugg borrowed $42,000 from Downs and executed a promissory note ("Note") agreeing to repay Downs. In 1997, Bugg drafted a revocable trust ("Trust") for

---

1. As the Estate has been open and involved in litigation since 2001, the facts are largely drawn from *Rutter v. Bugg (Estate of Downs)*, 75 S.W.3d 853 (Mo.App. W.D.2002), *Rutter v. Bugg (Estate of Downs)*, 242 S.W.3d 729 (Mo. App. W.D.2007), *State ex rel. Bugg v. Daniels*, 274 S.W.3d 502 (Mo.App. W.D.2008), *Rutter v. Bugg (Estate of Downs)*, 300 S.W.3d 242 (Mo.App. W.D.2009), and *Rutter v. Bugg (Estate of Downs)*, 347 S.W.3d 487 (Mo.App. W.D.2011).

Downs, naming himself and Downs as co-trustees. Downs's living expenses were to be paid from the Trust. Upon Downs's death, the remainder of the Trust was to go to Bugg and his wife.

In April 2000, Bugg used the durable power of attorney to purportedly assign all proceeds from the Note to the Trust. Approximately one year later, Bugg drafted a receipt which claimed that the $42,000 Note and $4,200.00 in interest accrued on the Note had been fully paid to the Trust.

In November 2000, the Boone County Public Administrator (the "Public Administrator") was appointed guardian and conservator for Downs, who suffered from dementia and was adjudged incapable of managing her financial resources and daily needs. A month later, the Public Administrator filed a petition for discovery of Downs's assets, referencing the Note. The trial court in that case found that the proceeds of the Note had not been lawfully transferred to the Trust and belonged instead in Downs's conservatorship. We affirmed this judgment on appeal. *Rutter v. Bugg (Estate of Downs)*, 75 S.W.3d 853 (Mo.App. W.D.2002) *("Downs I ")*.

In September 2001, Downs died. In July 2004, the Estate filed a petition for discovery of assets alleging that Bugg improperly retained possession of the Note. The trial court rendered summary judgment in favor of the Estate awarding it $17,573.71, (the balance due on the Note[2]), plus interest and other costs. We affirmed this judgment on appeal and ordered Bugg to reimburse the Estate for $1,500.00 in attorney's fees for filing a frivolous appeal. *Rutter v. Bugg (Estate of Downs)*, 242 S.W.3d 729 (Mo.App. W.D. 2007) *("Downs II ")*.

In 2007, the Estate unsuccessfully sought to garnish Bugg's assets to pay the *Downs II* judgment. In March 2008, the Estate filed a motion for contempt and for an examination of Bugg's assets. Judge Daniels was assigned as the trial judge in connection with the Estate on March 14, 2008. Following a hearing, Judge Daniels issued a judgment on June 20, 2008, finding Bugg in contempt of court for failing to comply with the *Downs II* judgment, and ordering Bugg confined to the county jail until he satisfied the *Downs II* judgment. On April 13, 2009, Bugg posted a $40,000.00 bond set by Judge Daniels as the means by which Bugg could stay the order of confinement. On appeal, we reversed and vacated the judgment of contempt and the order of confinement. *Rutter v. Bugg (Estate of Downs)*, 300 S.W.3d 242 (Mo.App. W.D.2009) *("Downs III ")*.

Following our decision in *Downs III*, and following an evidentiary hearing on the Estate's subsequent Motion for Order to Pay Over Funds, Judge Daniels entered a judgment on May 18, 2010 ordering that $35,248.84 of the bond Bugg had posted to avoid confinement be paid to the Estate, with the balance to be paid to Bugg. On appeal, we held that Judge Daniels exceeded her authority by sequestering Bugg's bond for purposes of satisfying the *Downs II* judgment. *Rutter v. Bugg (Estate of Downs)*, 347 S.W.3d 487 (Mo.App. W.D. 2011) *("Downs IV ")*.

On May 25, 2010, the Estate filed a Petition to Pay Attorney's Fees in the amount of $41,933.87. Bugg filed objections to the petition. Following a hearing, the trial court overruled Bugg's objections and granted the Estate's petition on June 18, 2010.

---

**2.** Bugg was allowed an offset against the principal balance of the Note for documented expenses he paid on behalf of Downs in the amount of $28,626.29.

On June 18, 2010, the Estate filed a Statement of Account and Petition for Order of Complete Settlement. The Statement of Account reflected as "paid" the attorney's fees authorized by the trial court's June 18, 2010 order approving the Estate's Petition to Pay Attorney's Fees. On July 6, 2010, Bugg filed objections to the Statement of Account. Bugg's objections once again complained about the amount of the attorney's fees. Bugg also filed a motion to disqualify Judge Daniels claiming she was biased and prejudiced against him as a result of the proceedings giving rise to *Downs III*.

On July 13, 2010, the trial court denied Bugg's motion to disqualify as untimely. On August 20, 2010, the trial court conducted a hearing on the Estate's Petition for an Order of Complete Settlement and on Bugg's objections to the Statement of Account. On September 23, 2010, the trial court overruled Bugg's objections, approved the Statement of Account, and entered an Order of Complete Settlement ("Judgment"). Bugg filed a motion to vacate or modify the Judgment and to stay the payment of attorney's fees,[3] which motion was denied after a hearing.

Bugg filed this timely appeal.

### Rule 84.04 violations

■ " 'Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made.' " *Patrick v. Monte Owens Agency, Inc.*, 332 S.W.3d 917, 920 (Mo.App. W.D. 2011) (citation omitted). Bugg fails to comply with Rule 84.04 in several respects. Bugg fails to comply with Rule 84.04(h)(1) in that the Judgment appealed from, although listed on the appendix table of contents, is not included in the appendix. Bugg's brief fails to comply with Rule 84.04(b) in that there is no jurisdictional statement. Bugg's brief fails to comply with Rule 84.04(c) in that his statement of facts is argumentative instead of "a fair and concise statement of the facts relevant to the questions presented for determination without argument." Moreover, Bugg's brief fails to adequately cite to the record as required by Rule 84.04(i) which states, "All statements of fact and argument shall have specific page references to the legal file or the transcript." *See Coleman v. Mo. Secretary of State*, 313 S.W.3d 148, 152 (Mo.App. W.D.2010).

■ Pro se claimants are held to the same standards as attorneys. *Kuenz v. Walker*, 244 S.W.3d 191, 193 (Mo.App. E.D.2007). " 'It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties.' " *Id.* (citation omitted). "Whether to dismiss an appeal for briefing deficiencies is discretionary. That discretion is generally not exercised unless the deficiency im-

---

**3.** Bugg filed a motion within thirty days after the Judgment entitled, "Motion to Vacate or Modify Final Settlement Judgment and Stay Payment of Attorney Fees." As denominated, this was not an authorized after-trial motion. However, regardless of the nomenclature employed by the parties, a motion that operates as a motion for a new trial in that it places before the trial court allegations of trial court error regarding contested legal or factual is-

sues is an authorized after-trial motion. *State v. Carter*, 202 S.W.3d 700, 705 (Mo.App. W.D. 2006). Here, Bugg's after-trial motion alleged that the trial court erred in finding the attorney's fees reasonable. Bugg's motion was tantamount, therefore, to a motion for new trial, and operated to extend the time before which the Judgment became final for purposes of appeal.

pedes disposition on the merits. It is always our preference to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief." *Lanham v. Div. of Emp't Sec.*, 340 S.W.3d 324, 327 (Mo.App. W.D.2011) (citations omitted). Therefore, we offer our analysis, *ex gratia*, to the extent that we may do so without advocating for Bugg. *Rainey v. Express Medical Transporters, Inc.*, 254 S.W.3d 905, 908 (Mo.App. E.D. 2008) (holding that court of appeals is prohibited from acting as an advocate).

## Analysis

Bugg raises two points on appeal. In his first point, Bugg claims that Judge Daniels erred by denying Bugg's motion that she be disqualified because Bugg's application for disqualification pursuant to section 472.060[4] was timely filed. In his second point, Bugg claims that the trial court erred in overruling his objections to attorney's fees reflected as payable by the Estate in the Statement of Account because the attorney's fees were wrong, improper, and injurious to the Estate as expressly prohibited by section 473.153.6.

## Standard of Review

■ "Appellate review of a decision on a motion to disqualify is limited to deciding whether the trial court's ruling on the claim of prejudice amounted to an abuse of discretion." *Elnicki v. Caracci*, 255 S.W.3d 44, 48 (Mo.App. E.D.2008) (citing *Berry v. Berry*, 654 S.W.2d 155, 159 (Mo.App. W.D.1983)). Appellate review of an award of attorney's fees will be reversed "only if the court abused its discretion ... or lacked the authority to award them." *K.M.D. v. Alosi*, 324 S.W.3d 477,

479 (Mo.App. W.D.2010) (internal citations omitted). " 'To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.' " *Russell v. Russell*, 210 S.W.3d 191, 199 (Mo. banc 2007) (citation omitted).

## Point I

■ For his first point, Bugg contends that the trial court erred in not disqualifying Judge Daniels because Bugg timely filed an application for disqualification pursuant to section 472.060. We disagree.

Section 472.060 provides,

No judge of probate shall sit in a case in which the judge is interested, or in which the judge is biased or prejudiced against any interested party, or in which the judge has been counsel or a material witness, or when the judge is related to either party, or in the determination of any cause or proceeding in the administration and settlement of any estate of which the judge has been personal representative, conservator, or guardian, when any party in interest objects in writing, verified by affidavit; and when the objections are made, the cause shall be transferred to another judge, in accordance with the provisions of section 478.255, RSMo, who shall hear and determine same; and the clerk of the circuit court or division clerk shall deliver to the probate division of the circuit court a full and complete transcript of the judgment, order or decree made in the cause, which shall be kept with the papers in the office pertaining to such cause.

---

4. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

Section 472.060 is a provision of the probate code which permits application for a change of judge separate from the general rule for change of judge in civil matters set forth in Rule 51.05. *Fischer v. Kranitz,* 168 S.W.3d 84, 94–95 (Mo.App. W.D. 2005). Pursuant to section 472.060, if the pleading " 'is in proper form and not waived by delay, disqualification is 'automatic' ... meaning without hearing evidence or having discretion in ruling on such request.' " *State ex rel. York v. Kays,* 916 S.W.2d 859, 860 (Mo.App. S.D. 1996) (quoting *State ex rel. Stephens v. Lamb,* 883 S.W.2d 101, 103 (Mo.App. S.D. 1994)). Merely making the allegation of bias and prejudice is sufficient. *Id.* at 861.

Unlike Rule 51.05, section 472.060 does not explicitly provide a time limitation for the filing of a motion to disqualify a judge. *Id.* at 95. However, our courts have interpreted section 472.060 "to require that such an application be brought prior to the commencement of proceedings." *Id* at 95. Further, Missouri courts have held " 'that a party may in effect waive his right to disqualify ... through delay in filing the motion. [A] party who unduly delays the filing of a motion to disqualify under Section 472.060 waives his right to automatic disqualification under the statute[.]' " *Id.*; (quoting *State ex rel. Nassau v. Kohn,* 731 S.W.2d 840, 842 (Mo. banc 1987)). The motion is untimely where it is "clear from the record that the 'trial' or hearing of the matter has commenced or the cause is taken under submission by the court." *Id.* As recognized by the Supreme Court in *Nassau,* a deadline must exist "to prevent unnecessary burden upon judicial administration caused by unreasonable delay" and "to prevent a party from disqualifying a judge after first determining the judge's inclination on the merits." 731 S.W.2d at 842.

The inquiry is not the exact moment when the filing must occur, "but, rather, at what state in the proceeding has there been sufficient undue delay in the motion's filing to render it untimely?" *Id.*

Here, there is no issue with the form of the motion. Bugg alleged bias and prejudice and his motion was verified, and thus comported with the technical requirements of section 472.060. There is an issue, however, with the motion's timeliness.

The Estate had been open since 2001. Judge Daniels was not assigned responsibility over the Estate, however, until March 14, 2008. Judge Daniels entered the judgment holding Bugg in contempt and ordering his confinement on June 20, 2008.

After the June 20, 2008 judgment of contempt and ordering Bugg's confinement was reversed and vacated in *Downs III,* Judge Daniels entertained the Estate's Motion for Order to Pay Over Funds and, following an evidentiary hearing on said motion, entered a judgment on May 18, 2010, directing the court to pay the Estate from the $40,000.00 bond that Bugg had posted. Bugg did not file a motion seeking Judge Daniel's disqualification in connection with these proceedings.

Shortly thereafter, the Estate commenced the process of closing the estate, and filed its Petition to Pay Attorney's fees on May 25, 2010. Bugg filed an objection to the Petition. A hearing was conducted on the Petition. On June 18, 2010, the trial court granted the Petition to Pay Attorney's Fees. Bugg did not file a motion seeking Judge Daniel's disqualification in connection with these proceedings.

On June 18, 2010, the Estate filed its Statement of Account and Petition for Order of Complete Settlement. The Statement of Account reflected as a payment

from the Estate the attorney's fees approved by Judge Daniels's June 18, 2010 order. On July 6, 2010, Bugg filed a Motion to Disqualify Probate Judge and Affidavit in which he alleged that Judge Daniels was biased and prejudiced against him because *"she recently ordered [Bugg] confined to jail for not paying a money debt."* (Emphasis added.) The trial court denied the motion as untimely citing *Fischer*, and noting that Bugg had appeared at numerous hearings before her prior to filing this motion, but after the decision in *Downs III*.

■ The facts of *Fischer* are similar to those of the case at bar. In *Fischer*, there were hearings both before and after a judgment ordering the movant to pay compensation and to show cause on a motion for contempt. 168 S.W.3d at 96. Movant failed to make application for change of judge prior to any of those hearings. *Id.* Only prior to the hearing on the show cause order did movant file an application. *Id.* We deemed the application untimely and stated, "Changes of judge will not be permitted to be used in an untimely fashion merely as a delay tactic." *Id.* We noted, however, "if there was an appearance of bias, the judge should have recused himself without regard to the issue of timeliness. . . . 'If, on the record, a reasonable person would find an appearance of impropriety, [Rule 2.03, Canon 3.E(1)] [5] compels recusal." [6]

Like the movant in *Fischer*, it is clear from the record that Bugg's motion to

disqualify was untimely. The motion was expressly based on a claim of bias and prejudice associated with Judge Daniels's June 20, 2008 judgment holding Bugg in contempt and confining him to jail.[7] Yet, following our reversal of Judge Daniels in *Downs III*, Bugg did not seek Judge Daniels's disqualification in connection with the Estate's efforts to have Bugg's bond applied to the *Downs II* judgment. Nor did Bugg seek Judge Daniels's disqualification in connection with the Estate's Petition to Pay Attorney's Fees. Rather, Bugg waited to file his motion to disqualify until *after* the trial court authorized the payment of attorney's fees, and until *after* the Estate filed its Statement of Account reflecting payment of those authorized fees. In objecting to the Statement of Account, Bugg re-asserted objections to the attorney's fees paid by the Estate even though Bugg had already had the opportunity to adjudicate his concerns in connection with the Estate's Petition to Pay Attorney's Fees. As in *Fischer*, Bugg's filing of the motion to disqualify was not timely, and appears instead to have been an impermissible delay tactic.

The trial court did not abuse its discretion in denying Bugg's motion to disqualify pursuant to section 472.060. Point One is denied.

## Point II

■ In his second point, Bugg claims that the trial court erred in overruling his

---

**5.** Rule 2.03, Canon 3.E(1), provides that "[a] judge shall recuse in a proceeding in which the judge's impartiality might reasonably be questioned."

**6.** On appeal, Bugg argues only the timeliness of his motion to disqualify, and not whether Judge Daniels committed error in denying the motion on its merits. "In reviewing the trial court's denial of a motion for change of judge, the appellate court presumes that a trial judge will not preside over a proceeding in which

the judge cannot be impartial." *Elnicki v. Caracci*, 255 S.W.3d 44, 48 (Mo.App. E.D. 2008) (citing *Williams v. Reed*, 6 S.W.3d 916, 920 (Mo.App. W.D.1999)).

**7.** We draw no conclusion as to whether Bugg's allegation was sufficient to constitute bias or prejudice as envisioned by section 472.060.

objections to the attorney's fees reflected as payable by the Estate in the Statement of Account. Bugg claims the attorney's fees were wrong, improper, and injurious to the Estate as expressly prohibited by section 473.153.6. Specifically, Bugg claims that the Estate's attorney billed for the hours she spent prosecuting an unlawful contempt action, and that she unlawfully split a single contract claim into two lawsuits. Bugg claims that the trial court's award of attorney's fees is not supported by substantial evidence and is against the weight of the evidence. We disagree.

■ Although Bugg complains in his second point relied on that the trial court's decision to award the attorney's fees sought from the Estate was "not supported by substantial evidence" and was "against the weight of the evidence," Bugg misstates our standard of review. The trial court has discretion to set attorney's fees and we will not reverse unless the award is arbitrary or unreasonable. *Howard v. City of Kansas City*, 332 S.W.3d 772, 792 (Mo. banc 2011). " 'The trial court is considered an expert at awarding attorney's fees.' " *Id.* (citation omitted).

Bugg previously asserted an objection to the Estate's payment of attorney's fees when he filed his Objection to Petition to Pay Attorney's Fees on June 3, 2010. In his Objection, Bugg generally denied that the attorney's fees were reasonable or in the best interest of the Estate. A hearing was held on June 18, 2010, at which Bugg appeared. No transcript of this hearing has been provided as a part of the record on appeal. We are thus unable to discern the precise nature of the arguments made by Bugg at the hearing with respect to the reasonableness of the attorney's fees. However, Bugg has not claimed that he was deprived of the opportunity at this hearing to raise any and all issues he had with the attorney's fees the Estate sought the authority to pay. On June 18, 2010, the trial court entered its order denying Bugg's Objections and granting the Estate's Petition to Pay Attorney's Fees.

On the same date, the Estate filed the Statement of Account and Petition for Order of Complete Settlement. In Bugg's objection to the Statement of Account, the only material issue raised by Bugg related, once again, to the reasonableness of the attorney's fees charged the Estate. Unlike the general assertion to this same effect in Bugg's Objection to Petition for Attorneys Fees, Bugg's objection to the Statement of Account specifically described a "partial list of attorney services or actions in connection with the administration of Down's Estate which are excessive, wrong, improper, and injurious to estate and cannot be allowed whatsoever. Others may be discovered during hearing." The list included, in summary fashion: (1) that the Estate failed to enforce the judgment finding the Note belonged to the Estate; (2) that the Estate failed to discover whether the Estate had other assets; (3) that the Estate failed to execute on the security for the Note, a Cessna Model 210 aircraft; (4) that the Estate's second asset discovery action regarding the unpaid balance of the Note was barred by claim splitting, res judicata, and estoppel; (5) that the Estate sought payment of its judgment and/or an order of contempt until payment was received; and (6) the Estate sequestered property from the bond posted by Bugg. Although, as we have noted, we cannot determine without a transcript whether similar specific objections were raised by Bugg during the earlier hearing on the Estate's Petition to Pay Attorney's Fees, we can safely conclude

that Bugg's objection to the Statement of Account attempted a second bite at the apple on the subject of the Estate's payment of attorney's fees.

On August 20, 2010, a hearing was held to address Bugg's objections to the Statement of Account. Bugg has not included the transcript of this hearing in the record on appeal. However, the trial court's September 23, 2010 Judgment notes that the trial court received into evidence all of the documents Bugg brought with him to the hearing. Bugg has not provided us with those exhibits.

The Judgment noted that the trial court had already taken up and overruled Bugg's objections to the Estate's payment of attorney's fees on June 18, 2010 when it granted the Estate's Petition to Pay Attorney's Fees. The Judgment nonetheless overruled the objections again and found that "the attorney's fees were properly documented and were reasonable ... the attorney's fees were largely incurred due to the actions of Eldon Bugg, which prolonged the administration of this Estate through several appeals, multiple court appearances, and several applications for extraordinary writs."

"[Bugg] bears the burden of providing a record on appeal that allows for meaningful appellate review." *Fansher v. Director of Revenue*, 147 S.W.3d 873, 874 (Mo.App. W.D.2004). As applied to this case, Bugg bears the burden of providing us with a record on appeal permitting us to determine whether the trial court abused its discretion in awarding attorney's fees. Bugg has not and cannot sustain this burden given his failure to afford us with the

transcript of the hearing on his objection to the Statement of Account, or the exhibits he introduced into evidence at that hearing.

■ Bugg is responsible for filing all exhibits that are necessary for the determination of any point relied on. Rule 81.12(e). " 'If exhibits admitted into evidence at trial are not filed on appeal, they are presumed to support the trial court's findings.' " *Petrol Properties, Inc. v. Stewart Title Co.*, 225 S.W.3d 448, 456 (Mo.App. S.D.2007) (citation omitted); *Smith v. Associated Natural Gas Co.*, 7 S.W.3d 530, 535 (Mo.App. S.D.1999) (Per Rule 81.12, "where exhibits are omitted from the transcript and are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant").

It is also Bugg's duty to order the transcript. Rule 81.12(c). Without a transcript, we lack the necessary information to determine whether the trial court abused its discretion in awarding attorney's fees to be paid from the Estate.[8] *See, e.g., Dale v. Dir., Mo. Dept. of Social Services, Family Support and Children's Div.*, 285 S.W.3d 770, 772 (Mo.App. S.D. 2009); *Citibank (South Dakota) N.A. v. Edwards*, 147 S.W.3d 810, 811 (Mo.App. W.D.2004) (cardholder's failure to provide appellate court with transcript of trial on credit card company's action to recover debt or exhibits admitted during trial precluded appellate review of claim that there was insufficient evidence to support finding that cardholder was responsible for debt).

---

**8.** Bugg has provided us the transcript from the hearing on his after-trial motion. However, he has not provided us with the critical transcript from the hearing giving rise to the Judgment from which he has filed his appeal.

Bugg has failed to demonstrate an abuse of discretion in the trial court's award of attorney's fees.   Point Two is denied.[9]

### Conclusion

We affirm the trial court's Judgment.

All concur.

---

9. The Estate's Motion for Sanctions, filed shortly before scheduled oral argument, was taken with the case and is denied.