STRCUE, INC., Respondent,

v.

Steven Christopher POTTS and Lawrence C. Potts, Jr., and Opal Potts, Appellants.

No. WD 74572.

Missouri Court of Appeals, Western District.

Nov. 27, 2012.

Christina T. Coen, Lexington, MO, for respondent.

John Christiansen and Dennis J. Campbell Owens, Kansas City, MO, for appellants.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Steven Potts, Lawrence C. Potts, Jr., and Opal Potts (collectively, the "Appellants")[1] appeal from the trial court's declaratory judgment finding two cash farm

---

1. Steven Potts is the son of Lawrence and Opal Potts.

leases (collectively, the "Leases"), one between STRCUE, Inc. ("STRCUE") and Steven Potts ("Lease I"), and one between STRCUE and Lawrence C. Potts, Jr., and Opal Potts ("Lease II"), valid and in full force and effect. Appellants claim that the trial court erred in finding that the Leases were not breached by STRCUE, and that the Leases had not been effectively terminated by the Appellants.

Because we find the issues raised on appeal to be moot, this appeal is dismissed.

### Factual and Procedural History [2]

STRCUE is a corporation duly organized and existing under the laws of the state of Missouri. The Appellants are residents of Missouri and *former* owners of real property ("Property") located in Caldwell County which is the subject of the Leases. Gary Guilford ("Guilford") was the holder of promissory notes secured by deeds of trust against the Property.[3]

Under Lease I, dated March 4, 2010, Steven Potts leased 360 acres to STRCUE for a period of two years in exchange for $54,000.00 in rent per year. Under Lease II, dated April 1, 2010, Lawrence and Opal Potts leased 100 acres to STRCUE for a period of two years in exchange for $12,500.00 in rent per year. The Leases provided that the 2010 annual rent payment was due upon lease execution and that the 2011 annual rent payment was due on or before January 5, 2011. Lease I was silent as to whom rent should be made payable, but directed that payment should be *mailed* to Guilford's mailing address.

Lease II provided that rent should be made payable to "Lawrence C. Potts, Jr., and Opal Potts or Gary Guilford, Manager, Platte, LLC" and directed that payment should be mailed to Guilford's mailing address. Both Leases expired by their terms on December 31, 2011.

On April 15, 2010, and thus shortly after the Leases were entered into, Appellants entered into an agreement with Guilford which required all rent payments from the Leases to be paid jointly to Appellants and Guilford ("Agreement"). STRCUE was made aware of the Agreement. STRCUE delivered the 2010 rent payments due under the Leases to Guilford.

On January 3, 2011, the Appellants sent STRCUE a letter alleging that STRCUE was not farming the proper amount of acreage, that STRCUE had interfered with Appellants' ability to lease parts of the Property for hunting, and that STRCUE had not paid Appellants amounts they were owed.[4] The letter advised STRCUE that "Guilford and [Guilford's address] are no longer acceptable for receipt of the rent payment."

The Leases included a provision permitting the Appellants to terminate if rent was "not paid on time or if [Appellants became] apprised of any other act or circumstance [leading them] to reasonably conclude that [STRCUE was] unable or unwilling to fulfill any and all obligations" under the Leases. To exercise this right, Appellants were required to send a notice of termination to STRCUE by certified

---

**2.** On appeal from a judgment in a court-tried case, we view the facts in the light most favorable to the judgment. *White v. Dir. of Revenue*, 321 S.W.3d 298, 302 (Mo. banc 2010).

**3.** The record suggests that Guilford took assignment of these promissory notes from other lenders.

**4.** Though the letter did not expressly reference the 2010 rent payments, Appellants were apparently taking the position that because the 2010 rent had been delivered by STRCUE to Guilford, Appellants had no way of confirming that the rent had been paid.

mail. The Leases provided that the notice of termination would be effective upon mailing.

On January 5, 2011, STRCUE paid the annual rent due under the Leases, and delivered the rent checks to Guilford. The rent checks were made payable jointly to Guilford and the respective Appellants. The unendorsed checks were held at Guilford's counsel's office.

On February 10, 2011, the Appellants' bankruptcy attorney,[5] Joel Pelofsky ("Pelofsky"), sent Guilford's counsel a letter confirming that "the lease dispute is resolved," and advising that STRCUE would continue as tenant under the Leases. The letter advised that Steven Potts would endorse the rent checks, and provided directions for application of the rent proceeds. At some point thereafter, the rent checks were delivered to Pelofsky's office. However, they remained unendorsed.

On March 28, 2011, the Appellants sent a second letter to STRCUE entitled "Termination for Non Payment of Rent." Appellants took the position that because the January 3, 2011 letter had advised STRCUE that rent should not be delivered to Guilford, the rent due on January 5, 2011, had not been paid because it was not delivered to Appellants. The letter advised that the Leases were terminated.

On April 20, 2011, STRCUE filed its petition for declaratory judgment and for temporary injunction (the "Petition").[6] STRCUE sought a declaration that the Leases were valid and remained in force and effect. In their separate answers to the Petition, the Appellants asserted an affirmative defense that "[t]here is a fail-ure of consideration as the rent checks are not capable of being negotiated by [Appellants]."

On May 3, 2011, the Appellants entered into a contract ("Contract") to sell the Property to William A. Mast ("Mast"), Trustee of the William A. Mast Revocable Trust Agreement dated January 10, 2005, and Mary Beth Mast, Trustee of the Mary Beth Mast Revocable Trust Agreement dated January 10, 2005 (the "Mast Trust"). The Contract anticipated that at closing, the parties would sign a Lease with Option to Purchase, permitting Appellants to Lease the Property. Mast testified that he understood that notwithstanding the Lease with Option to Purchase, the Mast Trust was acquiring the Property subject to the STRCUE Leases, and that the Mast Trust was not entitled to the 2011 rent from the STRCUE Leases. The Lease with Option to Purchase expressly noted that Appellants' rights to lease the Property back from the Mast Trust were subject to the existing STRCUE Leases. The transaction anticipated by the Contract closed on or about May 20, 2011.

A bench trial on STRCUE's declaratory judgment action was held on July 13, 2011. Following trial, but while the matter was still under submission, the parties filed a *joint motion* advising the court of the following additional evidence: (1) on June 7, 2011, the Appellants filed motions in their pending bankruptcy seeking orders to show cause why Guilford should not be required to endorse the 2011 rent checks; (2) the Bankruptcy Court ordered Guilford to endorse the 2011 rent checks and divided the proceeds of the checks between Guilford and the Appellants; (3) the 2011

---

**5.** The record suggests that Appellants filed a Chapter 12 bankruptcy in February 2008, and that a plan was thereafter confirmed in June 2008. The record suggests that Appellants' filed a second bankruptcy in February 2009 that was converted to a Chapter 13 case in March 2009.

**6.** STRCUE's request for a temporary injunction was denied.

rent checks were thereafter endorsed by Guilford and the Appellants and divided in accordance with the Bankruptcy Court's order.

On September 7, 2011, the trial court entered its judgment ("Judgment"). The Judgment declared that the Leases were valid and remained in force and effect, and directed the Appellants to refrain from interfering with STRCUE's farming operations on the Property. Specifically, the trial court found that STRCUE "made timely payment in full of the cash leases for 2011;" that Appellants "accepted the cash lease payments for the year 2011 from [STRCUE];" that "[n]o other breach of the [Leases] [other than non-payment of 2011 rent] was plead [sic] or proved" by Appellants; and that while Appellants were the owners of the Property at the time the Petition was filed, Appellants thereafter "terminated their interest in the [Leases] except for the right to receive the 2011 payment, when they conveyed all their interest in the [Property] to the Mast Trust." Based on the latter finding, the trial court concluded that Appellants "no longer have any right to contest the validity of the [Leases]."

The Appellants filed a motion for new trial or to amend the judgment in which they alleged that the Leases were irrevocably terminated on January 3, 2011, prior to the sale of the Property on May 3, 2011, and that the January 3, 2011 termination letter raised issues of performance other than non-payment of rent which were supported by the evidence at trial. The motion for new trial requested surrender of the Property to Appellants *on or before the Leases' termination date of December 31, 2011*. On November 17, 2011, the trial court denied the Appellants' post-trial motion.

This appeal followed.

## Standard of Review

"The standard of review in a declaratory judgment case is the same as in any other court-tried case." *Levinson v. State,* 104 S.W.3d 409, 411 (Mo. banc 2003). "The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*

## Analysis

█ The Appellants raise two points on appeal. In their first point, Appellants claim that the trial court erred in finding that STRCUE was not in breach of the Leases. In their second point, Appellants claim that the trial court erred in finding that the Leases were valid and in full force and effect because the Leases were effectively and irrevocably terminated by the January 3, 2011 letter.

█ We need not reach the issues raised in Appellants' points relied on as they have been rendered moot. " 'Whether a case is moot is a legal issue that we raise *sua sponte* on appeal.' " *Westcott v. State,* 361 S.W.3d 468, 471–72 (Mo.App. W.D.2012) (quoting *T.C.T. v. Shafinia,* 351 S.W.3d 34, 36 (Mo.App. W.D.2011)).

> With regard to justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy. Because mootness implicates the justiciability of a case, the court may dismiss a case for mootness *sua sponte.* When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed.

*State ex rel. Missouri Public Defender Comm'n v. Waters,* 370 S.W.3d 592, 614 (Mo. banc 2012) (citation omitted).

On the face of the record, the Leases expired by their own terms on December 31, 2011, a fact which is conceded in Appellants' motion for new trial, where Appellants asked the trial court to order STRCUE to surrender the Property *on or before the Leases' termination date of December 31, 2011.* Appellants did not assert an affirmative claim for relief in this action, and thus did not seek damages or any other relief from the trial court other than a judgment denying STRCUE's request for a declaration that the Leases were valid. As the Leases have naturally expired by their terms, no live controversy exists. If we were to find, as Appellants request, that the Leases were breached by STRCUE and thus effectively terminated by the Appellants' January 3, 2011 letter, our findings would be of no consequence, and would merely declare the validity of Leases which have now expired of their own accord. Reversal of the trial court's judgment, the only relief sought by the Appellants on appeal, would have no practical effect upon an existing controversy. *See Personal Finance Co. of Missouri v. Day,* 349 Mo. 1139, 164 S.W.2d 273, 274 (1942) (where contract expired during pendency of appeal, in the absence of an issue of damages, issue of contract enforcement became moot and appeal was properly dismissed); *Missouri Consolidated Health Care Plan v. Community Health Plan,* 81 S.W.3d 34, 50 (Mo.App. W.D.2002) (where contracts expired before appeal, no live controversy existed concerning whether party should be enjoined from breaching its obligations under the contracts). Thus, the issues presented by Appellants' points on appeal are moot. We are compelled to dismiss, therefore, Appellants' appeal.

We also observe, alternatively, that the Appellants have not appealed and leave unchallenged the trial court's finding that Appellants had no "right to contest the validity of the [Leases]" as they conveyed ownership of the Property to the Mast Trust after STRCUE's Petition was filed, and prior to trial. This finding served as an independent basis for the trial court's entry of judgment in favor of STRCUE, and was in the alternative to its finding that STRCUE was not in breach because it paid, and Appellants received, all rent due under the Leases.

██ The Appellants' failure to challenge the finding that they did not have the right to contest the continued validity of the Leases is fatal to their appeal. *See Loven v. Greene County,* 94 S.W.3d 475, 478 (Mo.App. S.D.2003) ("An appellant's failure to challenge a finding and ruling that would support the conclusion complained about is fatal to an appeal."). It is the Appellants' "burden on appeal to demonstrate that the trial court's judgment was incorrect on any basis supported by the record and the applicable law.... As such, the [Appellants'] failure to properly challenge a finding and ruling of the trial court that would support its judgment ... would be fatal to [their] appeal." *Landry v. Miller,* 998 S.W.2d 837, 840 (Mo.App. W.D.1999) (abrogated on other grounds) (internal citation omitted); *see also City of Peculiar v. Hunt Martin Materials, LLC,* 274 S.W.3d 588, 590–91 (Mo.App. W.D. 2009) (holding that to establish grounds for reversal, an appellant must challenge all grounds on which the trial court ruled against it); *Houston v. Roadway Express, Inc.,* 133 S.W.3d 173, 178 (Mo.App. S.D. 2004) (express and implicit findings left unchallenged on appeal resulted in waiver of claim of non-liability).

Appellants' appeal is dismissed.

### Pending Motion

██ During the pendency of this appeal, STRCUE filed a motion for damages for frivolous appeal pursuant to Rule 84.19,

which this court determined to take with the case. STRCUE argues that the only defense raised in the Appellants' Answer to the Petition was that they never received the 2011 rent payments when the record clearly reflects to the contrary, particularly in light of the Bankruptcy Court pleadings submitted into evidence by the parties' agreement post-trial.

■ Rule 84.19 provides that "[i]f an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." " 'While no hard and fast rule as to what constitutes a frivolous appeal has been advanced and the issue must be considered on a case-by-case basis, the test generally used is whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success.' " *Biersmith v. Curry Ass'n Management, Inc.*, 359 S.W.3d 84, 89–90 (Mo.App. W.D. 2011) (citations omitted). " 'The issues presented on appeal must be at least fairly debatable in order to avoid assessment of damages for frivolous appeals.' " *Id.* at 90 (citation omitted).

STRCUE's motion revolves around evidence that was contested at trial, however disingenuously. STRCUE could have sought relief from the trial court on the basis asserted in its pending motion under Rule 55.03(d), based on a claimed violation of Rule 55.03(c) which renders every pleading a certification by client and attorney that claims or defenses asserted are not frivolous and are supported by evidence. However, the record does not reflect that STRCUE did so.

"[T]he assessment of damages for a frivolous appeal is a drastic measure that is not imposed lightly." *Shafinia v. Nash*, 372 S.W.3d 490, 495 (Mo.App. W.D.2012). Though we are troubled by the facial lack of merit to this appeal on the grounds herein discussed, we are reluctant to grant a motion seeking sanctions for frivolous appeal on grounds that would have been better raised with the trial court. We are even more reluctant to grant such a motion when the principal basis for our dismissal of this appeal—mootness due to the natural expiration of the term of Leases—has not been raised by STRCUE.[7] We thus exercise our discretion to deny STRCUE's motion for damages for frivolous appeal. *Id.* at 496 ("The authority to assess damages for a frivolous appeal rests within the sound discretion of this court.").

### Conclusion

Appellants' appeal is dismissed.

All concur.

---

7. STRCUE did argue "mootness" in its Brief on the basis that Appellants no longer own the Property. This, of course, was the factual basis for the trial court's finding that Appellants no longer had any right to challenge the validity of the Leases, a finding that was not challenged by Appellants on appeal, and the alternative basis for our decision to dismiss this appeal. STRCUE did not argue in their Brief that Appellants' failure to contest this alternative basis for the trial court's judgment was fatal to their appeal.