

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

ELDON BUGG, )
)
Appellant, )
)
v. ) WD77690
)
) OPINION FILED:
) April 21, 2015
JAMES L. RUTTER, JEAN GOLDSTEIN, )
and CHRISTY BLAKEMORE, )
)
Respondents. )

**Appeal from the Circuit Court of Moniteau County, Missouri**
**The Honorable Ralph H. Jaynes, Judge**

**Before Division III:** Mark D. Pfeiffer, Presiding Judge, and
Gary D. Witt and Anthony Rex Gabbert, Judges

Eldon Bugg ("Mr. Bugg") appeals from the Judgment of the Circuit Court of Moniteau

County, Missouri ("trial court"), granting summary judgment to James L. Rutter ("Rutter"), the

personal representative of the Estate of Laura Downs ("Estate"); Jean E. Goldstein ("Goldstein),

the attorney for Rutter and the Estate; and Christy Blakemore, the Clerk of the Circuit Court of

Boone County ("Clerk").

All of Mr. Bugg's present civil tort claims relate to the administration of the Estate from

a separate probate court proceeding in the Circuit Court of Boone County, Missouri, a probate

judgment that we have previously declared to be final *and not subject to collateral attack*.  In fact, we have advised Mr. Bugg in *numerous* previous appeals that his continuing litigation and appeals are improper collateral attacks on the probate judgment, and we have expressly warned him not to continue such frivolous litigation and appeals.  Unfortunately, our warnings to Mr. Bugg have fallen upon deaf ears, and we find ourselves repeating our ruling yet again.  This time, however, it comes with a price to Mr. Bugg, as we affirm the judgment and order sanctions to be imposed upon Mr. Bugg.

**Factual and Procedural Background**

This is the eleventh time the facts of this case have been before us on appeal.  Facts in addition to those presented herein may be found in *Rutter v. Bugg (Estate of Downs)*, 75 S.W.3d 853 (Mo. App. W.D. 2002) *("Bugg I")*; *Rutter v. Bugg (Estate of Downs)*, 242 S.W.3d 729 (Mo. App. W.D. 2007) *("Bugg II")*; *Rutter v. Bugg (Estate of Downs)*, 300 S.W.3d 242 (Mo. App. W.D. 2009) *("Bugg III")*; *Bugg v. Rutter*, 330 S.W.3d 148 (Mo. App. W.D. 2010) *("Bugg IV")*; *Rutter v. Bugg (Estate of Downs)*, 347 S.W.3d 487 (Mo. App. W.D. 2011) *("Bugg V")*; *Rutter v. Bugg (Estate of Downs)*, 348 S.W.3d 848 (Mo. App. W.D. 2011) *("Bugg VI")*; *State ex rel. Bugg v. Daniels*, No. WD74697 *("Bugg VII")*; *Rutter v. Bugg (Estate of Downs)*, 400 S.W.3d 360 (Mo. App. W.D. 2013) *("Bugg VIII")*; *Rutter v. Bugg (Estate of Downs)*, 437 S.W.3d 814 (Mo. App. W.D. 2014) *("Bugg IX")*; *Bugg v. Rutter*, 451 S.W.3d 776 (Mo. App. W.D. 2014) *("Bugg X")*.

In *Bugg X*, though unpublished, we advised Mr. Bugg in a slip opinion that "[w]hile Mr. Bugg may not necessarily be attempting to relitigate the same cause of action adjudicated in the probate case, his claims [in a separate lawsuit from the probate judgment] arise out of the defendants' conduct on behalf of the Estate in collecting from him and distributing $35,248.84.

Mr. Bugg had the opportunity to seek relief from the defendants' conduct before the judgment closing the Estate became final." In so doing, we concluded that "Mr. Bugg's petition [filed in a different court from the probate judgment] was an improper collateral attack on the judgment closing the Estate and was barred by res judicata." *Bugg X* at slip op. 5-6.[1]

This case is virtually *identical* to the procedural history of the present appeal—an appeal that we are deciding approximately six months after we issued our ruling in *Bugg X*.

While Mr. Bugg may not necessarily be attempting to relitigate the same causes of action he has previously asserted in the probate case and other collateral litigation, *all of his present tort claims arise out of the conduct of Rutter, Goldstein, and the Clerk related to the Estate and the collection and distribution of the same $35,248.84 that was the subject of Bugg X and numerous previous appeals relating to the probate case*. Simply put, as we have said on many numerous occasions in the past, Mr. Bugg has already had his opportunity to assert his present tort claims in prior proceedings that have become final and are not subject to collateral attack.

On March 18, 2014, the trial court here entered summary judgment in favor of Rutter and Goldstein on the basis that Mr. Bugg's claims were an improper collateral attack of a final judgment involving these parties; the trial court additionally entered summary judgment in favor of the Clerk on the basis that the Clerk was entitled to immunity.

Mr. Bugg appeals, asserting three points on appeal.

---

[1] Rule 84.16(b) declares that our unpublished memoranda in support of *per curiam* orders are not to be "used" in subsequent cases as precedent, and we do not intend for our reference herein to suggest precedential value. Instead, we are merely pointing out the fact that this Court has expressly advised *this appellant* (i.e. Mr. Bugg) in an unpublished memorandum on virtually identical facts and procedural history—approximately six months ago.

3

## Rule 84.04 Violations

Preliminarily, we note that Rutter and Goldstein filed a motion to dismiss Mr. Bugg's appeal for failure to comply with the requirements of Rule 84.04.  The motion was taken with the case.

"Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made."  *Bugg VI*, 348 S.W.3d at 852 (internal quotation omitted).  Mr. Bugg's brief fails to comply with Rule 84.04 in several respects.  His statement of facts fails to set forth the relevant facts, Rule 84.04(c); his points relied on are inadequate, Rule 84.04(d); and his arguments, Rule 84.04(e), "are almost impossible to decipher."

"Whether to dismiss an appeal for briefing deficiencies is discretionary.  That discretion is generally not exercised unless the deficiency impedes disposition on the merits.  It is always our preference to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief."  *Lanham v. Div. of Emp't Sec.*, 340 S.W.3d 324, 327 (Mo. App. W.D. 2011) (citations omitted) (internal quotation omitted).  Therefore, although Mr. Bugg's brief is deficient, we deny Rutter and Goldstein's motion to dismiss.  The principal gist of Mr. Bugg's argument is focused on claiming error in the summary judgment rulings; accordingly, we offer our analysis, *ex gratia*, to the extent that we may do so without advocating for Mr. Bugg.  *See Rainey v. Express Med. Transporters, Inc.*, 254 S.W.3d 905, 908 (Mo. App. E.D. 2008) (holding that court of appeals is prohibited from acting as an advocate).

## Standard of Review

This court reviews a grant of summary judgment *de novo* as a question of law.  *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc

1993).  Summary judgment is appropriate when a party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).

The right to judgment as a matter of law differs depending on whether the moving party is the claimant or the defending party.  *ITT*, 854 S.W.2d at 381.  In this case, Rutter, Goldstein, and the Clerk are the defending parties:

> [A] 'defending party' may establish a right to judgment by showing (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*  We review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record.  *Id.* at 376.

### Points II and III – Summary Judgment

In Mr. Bugg's second and third points on appeal, he asserts that the trial court erred in granting summary judgment to the defendants.  In Point II, he claims trial court error in granting summary judgment to Rutter and Goldstein; in Point III, he asserts that the trial court erred in granting summary judgment to the Clerk.

Mr. Bugg's fourth amended petition in the case underlying this appeal asserted tort claims arising out of the conduct of Rutter, Goldstein, and the Clerk related to the Estate and to the collection and distribution of $35,248.84, all of which were related to a final probate judgment from the Circuit Court of Boone County, Missouri.

The trial court entered judgment in favor of all defendants on their motions for summary judgment without further elaboration. "[A] trial court's order is presumed to have based its decision on the grounds specified in Respondents' motions if the trial court's order does not set forth its reasoning." *Nautilus Ins. Co. v. Jesse James Festival, Inc.*, 269 S.W.3d 442, 445 (Mo. App. W.D. 2008) (internal quotation omitted). "Where, as here, the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the summary judgment if it is appropriate under any theory." *Id.* (internal quotation omitted).

Rutter and Goldstein argued as one ground for summary judgment that Mr. Bugg's lawsuit, although a tort action, was an impermissible collateral attack on the probate court's judgment. We agree.

"The final settlement of an estate has the conclusiveness of a final judgment and is impervious to collateral attack as the judgment of a court of general jurisdiction." *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996). "Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a 'collateral attack.'" *Reimer v. Hayes*, 365 S.W.3d 280, 283 (Mo. App. W.D. 2012) (internal quotation omitted). "A judgment rendered by a court having jurisdiction of the parties and subject matter . . . is not open to collateral attack in respect of its validity or conclusiveness of the matters adjudicated." *Id.* (internal quotation omitted). "Generally, the validity of a judgment can only be attacked by direct appeal, not by collateral attack." *Id.* (internal quotation omitted) (footnote number omitted). "The need for certainty and finality of judgments compels this rule." *Id.* (internal quotation omitted). "Neither may such a judgment be collaterally attacked on account of mere

irregularities or errors even when these appear on the face of the record." *Barry, Inc. v. Falk*, 217 S.W.3d 317, 320 (Mo. App. W.D. 2007) (internal quotation omitted).

The tort claims Mr. Bugg raised in his fourth amended petition arise from the probate court's orders for contempt, sequestration, and final distribution of $35,248.84 and concern acts taken by Rutter and Goldstein in the probate case in response to the orders of the probate court. These claims are a collateral attack on the Boone County probate court's judgment and order of final distribution and discharge of the personal representative. The administration of a decedent's estate, from the filing of an application for letters testamentary or of administration until the closure of the estate upon the decree of final distribution and the discharge of the personal representative, is deemed one proceeding. *Bugg VIII*, 400 S.W.3d at 362. By affirming the final judgment and order of distribution in the probate case, this court rejected Mr. Bugg's claims regarding the collection of the judgment and the distribution of the assets. *See Bugg VI*, 348 S.W.3d 848. We have also rejected challenges to the probate court's judgment in *Bugg VIII*, 400 S.W.3d 360, and in *Bugg IX*, 437 S.W.3d 814. Mr. Bugg cannot use this civil tort action as a subterfuge for relitigating issues decided in the probate court's judgment and affirmed on appeal. *See Gianella v. Gianella*, 234 S.W.3d 526, 531 (Mo. App. E.D. 2007) ("To allow Sister to proceed on her petition [for tortious interference with inheritance], which asserts the same facts known to and alleged by her in the probate action and which seeks the same relief sought, would effectively allow a collateral attack on the judgment approving the final settlement and distribution of the estate."). Mr. Bugg's tort claims against Rutter and Goldstein are impermissible collateral attacks against the probate court judgment, and accordingly, the trial court did not err in granting summary judgment to Rutter and Goldstein.

The Clerk also filed a motion for summary judgment, arguing that she is protected from Mr. Bugg's tort suit alleging negligence and breach of fiduciary duty regarding the sequestration by sovereign immunity as a state official, by official immunity in the performance of a discretionary act, and by judicial immunity as an officer of the court carrying out a court order.

Missouri has adopted absolute judicial immunity, which protects "[c]onduct which is 'intimately associated with the judicial phase' of the judicial process." *White v. Camden Cnty. Sheriff's Dep't*, 106 S.W.3d 626, 633 (Mo. App. S.D. 2003) (quoting *Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). "[T]he United States Supreme Court has repeatedly recognized that it is not the judicial office but the judicial *function* that requires protection." *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 382 (Mo. App. E.D. 1993) (citing *Westfall v. Erwin*, 484 U.S. 292, 296 n.3, 108 S.Ct. 580, 583 n.3, 98 L.Ed.2d 619 (1988) ("[T]his Court has long favored a 'functional' inquiry—immunity attaches to particular official functions, not to particular offices."); *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988); *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982)). The doctrine may be invoked by individuals who are not judges. *Id.*

"The circuit clerk is an arm of the circuit court. The circuit clerk does not act independently of the circuit court, but acts under the supervision of the judge." *Twentieth Judicial Circuit of State of Mo. v. Board of Comm'rs of Cnty. of Franklin*, 911 S.W.2d 626, 628 (Mo. banc 1995) (internal quotation omitted). "Thus, the clerk is an agent of the circuit judge and possesses the statutory authority to perform certain tasks." *Id.*

While the mere status of a defendant as clerk of the court does not itself impart a cloak of absolute immunity, when the nature of the act and the circumstances under which it was performed are considered, the doctrine of judicial immunity is available as a defense for a court

8

clerk where the act at issue was performed at the express direction of a judge. *Smith v. Lewis*, 669 S.W.2d 558, 563 (Mo. App. W.D. 1983). The grant of judicial immunity to officers executing facially valid court orders is "essential if the court's authority and ability to function are to remain uncompromised." *White*, 106 S.W.3d at 633 (internal quotation omitted). "[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a light[ ]ning rod for harassing litigation aimed at judicial orders." *Id.* (internal quotation omitted).

Mr. Bugg admits that the Clerk deposited the $40,000 Mr. Bugg posted as bail funds during the probate court proceedings into the registry of the Boone County Circuit Court. He further admits that the Clerk obeyed the probate court's facially valid judgment and order directing her to execute the contested $35,248.84 payout. Accordingly, the Clerk's actions in transferring the funds held in the registry of the court in compliance with the probate court's order are entitled to absolute judicial immunity and summary judgment was proper. "[T]o hold otherwise would require . . . court officers enforcing facially valid orders to act as pseudo-appellate courts scrutinizing the orders of judges. Such a result is obviously untenable." *Id.* (internal quotation omitted).

Points II and III are denied.

### Point I – Change of Judge

In Mr. Bugg's first point on appeal, he argues noncompliance with Missouri Supreme Court Rule 51.06, relating to the granting of an application for change of judge by Rutter and Goldstein.

9

"We interpret Missouri Supreme Court rules in the same fashion as statutes." *Muhm v. Myers*, 400 S.W.3d 846, 849 (Mo. App. E.D. 2013). "Statutory interpretation is a question of law, which we review de novo." *Id.* (internal quotation omitted).

Rule 51.06 provides: "If a party requests and obtains either a change of venue or a change of judge, that party shall not be granted any additional change thereafter except for cause or under Rule 51.07. A party who desires both a change of venue and a change of judge must join and present both in a single application." Rule 51.06(a).

Here, Rutter and Goldstein requested a change of venue when the original lawsuit was filed, and it was granted. Thereafter, Rutter and Goldstein requested and received a change of judge. After the subsequent judge later recused, the Missouri Supreme Court assigned Judge Ralph Jaynes to preside over the case. Three months *after* the assignment of Judge Jaynes to the case, for the first time, Mr. Bugg asserted his Rule 51.06 argument in a document titled "motion to correct erroneous change of judge"—challenging the granting of Rutter and Goldstein's original change of judge request that had occurred some fifteen months and two judges previously. Judge Jaynes overruled Mr. Bugg's motion.

"[I]f a matter is not jurisdictional but rather is a procedural matter required by statute or rule or an affirmative defense of the sort listed in Rule 55.08, then it generally may be waived if not raised timely." *McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 476 (Mo. banc 2009). "Procedural rules are but the means through which we seek to ensure the fair and orderly resolution of disputes and to attain just results. They are not ends in themselves." *Heintz v. Woodson*, 758 S.W.2d 452, 454 (Mo. banc 1988). "For this reason, we do not generally consider noncompliance with rules or statutory procedures to warrant reversal in the absence of prejudice." *Id.*

Mr. Bugg does not suggest, nor can we discern, how his alleged change of judge error affected the action's merits.  *See* Rule 84.13(b) ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.").  Furthermore, "[e]rror cannot be predicated on the erroneous grant of a change of judge."  *Ne. Painting Co. v. AOC Int'l (U.S.A.), Ltd.*, 831 S.W.2d 711, 712 (Mo. App. W.D. 1992).  "A party is entitled to no particular judge."  *Id.*

By failing to raise an objection based on violation of Rule 51.06 in a timely manner, Mr. Bugg waived his claim of error.  Additionally, Mr. Bugg fails to demonstrate prejudice materially affecting the merits of the underlying action, particularly given our analysis relating to Points II and III in our ruling today.

Point I is denied.

## Sanctions

Before submission of this case, Rutter and Goldstein filed a motion with this court seeking sanctions against Mr. Bugg.

For over thirteen years, in addition to the numerous appeals and writs in the probate case, Mr. Bugg has filed six separate tort actions against Rutter and Goldstein and has generated forty-four cases, all arising from the administration of the probate estate.  Furthermore, Mr. Bugg has disregarded this court's warning against such further litigation.  *Bugg VIII*, 437 S.W.3d at 815 n.3.

Rule 84.19 provides that "[i]f an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper."  "The purpose of sanctions is two-fold:  1) to prevent congestion of appellate court dockets with cases devoid of merit, and 2) to compensate respondents for incurring expenses defending judgments

against meritless issues." *Dennis v. H & K Mach. Serv. Co.*, 186 S.W.3d 484, 487 (Mo. App. E.D. 2006). "While no hard and fast rule as to what constitutes a frivolous appeal has been advanced and the issue must be considered on a case-by-case basis, the test generally used is whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 220 (Mo. App. W.D. 2012) (internal quotation omitted). "The authority to assess damages for a frivolous appeal rests within the sound discretion of this court." *Id.* (internal quotation omitted).

Mr. Bugg's appeal is frivolous.

Missouri follows the American Rule, meaning that absent statutory authorization or contractual agreement, each litigant pays his or her own attorneys' fees, with few exceptions. *Klinkerfuss v. Cronin*, 289 S.W.3d 607, 618 (Mo. App. E.D. 2009). One of the few exceptions is "special circumstances." *Id.* "[I]ntentional misconduct constitutes 'special circumstances' justifying an award of attorney's fees." *Id.* at 619.

Mr. Bugg's ongoing vexatious litigation and frivolous appeals constitute intentional misconduct, justifying an award of attorneys' fees under the "special circumstances" exception to the American Rule.[2]

We have "cautioned [Mr. Bugg] against bringing these [collateral attack] claims," *Bugg IV*, 330 S.W.3d at 157 n.12; we have advised Mr. Bugg that "justice dictates that 'there must be an end of litigation'" and have expressed "our hope that Mr. Bugg will finally recognize that that time has come in this case." *Bugg IX*, 437 S.W.3d at 815 n.3.

Mr. Bugg has blatantly chosen to disregard these warnings.

---

[2] While an award of attorneys' fees under the "special circumstances" exception is mutually exclusive from an award of damages as a sanction for the filing of a frivolous appeal, we are merely noting that there are multiple grounds upon which we are authorized to impose a monetary penalty upon Mr. Bugg.

Accordingly, we grant Rutter and Goldstein's motion for sanctions and order that Rutter and Goldstein be awarded reasonable attorneys' fees for the number of hours that have been invested by counsel for respondents Rutter and Goldstein related to Mr. Bugg's present appeal. *See Epstein v. Rochman (Estate of Steiner)*, 765 S.W.2d 312, 313 (Mo. App. E.D. 1988). At oral argument, counsel for Rutter and Goldstein represented to the court that he had spent 40 hours in connection with this appeal. Given the extensive briefing necessitated by Mr. Bugg's frivolous appeal, this is a reasonable representation of time expended in response thereto. At the modest hourly rate of $150 per hour, a sanction award of $6,000 is justified.

## Conclusion

The judgment of the circuit court is affirmed. Pursuant to Rule 84.19, we grant Rutter and Goldstein's motion for sanctions for frivolous appeal, and assess a sanction in the amount of $6,000, against appellant Mr. Bugg and in favor of respondents Rutter and Goldstein. We further order that Mr. Bugg shall not be permitted to initiate further civil appeals to this Court involving any of the respondent parties herein relating to the underlying fact pattern that this Court has now ruled upon for the eleventh time, unless and until Mr. Bugg has provided proof that he has complied with this Court's present sanction ruling.[3] All other pending motions are denied.

_____
Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Anthony Rex Gabbert, Judges, concur.

---

[3] It is well-established that courts may prospectively restrict an abusive litigant's right to file pleadings in a fashion as outlined in our ruling today. *See, e.g.*, *In re McDonald*, 489 U.S. 180, 184 (1989); *Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 310 (D.C. Cir. 2008). In at least one instance, a federal court from the Western District of Missouri has issued a permanent injunction against prospective future filings by a party who evidenced a similarly frivolous filing pattern as Mr. Bugg's pattern of filings against respondents Rutter and Goldstein. *Pankey v. Webster*, 816 F.Supp. 553, 563 (W.D. Mo. 1993). If Mr. Bugg's pattern of frivolous filings continues, we may revisit the possibility of a permanent injunction, as well as the full complement of sanctions within the Court's inherent powers, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), in order to ensure an effective allocation of limited judicial resources and protect respondents and those similarly situated, from abusive litigation.