

# Missouri Court of Appeals
## Southern District

### In Division

VENA SUE PENTECOST, )
)
       Plaintiff-Respondent, )
)
    v. ) No. SD37447
)
MICHAEL WEBSTER, ) **Filed: July 25, 2023**
)
       Defendant-Appellant, )
)
   and )
)
RICHARD L. PENTECOST, et al., )
)
       Defendants. )

### APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

The Honorable Aaron G. Koeppen, Judge

### **AFFIRMED**

Michael Webster ("Michael") appeals from a judgment: (1) quieting title to a

Camden County property known as DeBerry[1] Farm in Vena Sue Pentecost ("Vena"); (2)

denying Michael's claim that he secured title to DeBerry Farm by adverse possession

---

[1] The parties and evidence refer to the same property with slightly different spellings at times (i.e., DeBerry, Deberry, Duberry, and Dewberry). We have chosen to use "DeBerry" for consistency.

1

after his father, Charles Webster ("Charles"), purported to convey DeBerry Farm to Michael in 1992; and (3) denying Michael's crossclaims against Vena's son, Richard L. Pentecost ("Richard"), and third-party petition claims against Michael's sister, Beth Miller ("Beth"), and her husband, and the unknown heirs and assigns of Charles and his former wife, Carol Webster ("Carol").[2] Michael raises nine points relied on. We reject them all and affirm the trial court's judgment.

### Factual Background and Procedural History[3]

Charles and Carol acquired DeBerry Farm via a sheriff's partition deed on November 27, 1973. DeBerry Farm is an approximately 250-acre property of agricultural land primarily used for cattle. It has no home or similar structure on the property. Carol and Charles were married when they acquired the property and owned it as a tenancy by the entirety.

Carol filed for divorce from Charles in 1989, and the dissolution of marriage was granted on August 8, 1993. The 1993 judgment dissolving Charles and Carol's marriage incorporated their settlement and separation agreement, which awarded DeBerry Farm to Charles. However, in 1992 while still in the middle of divorce proceedings, Charles signed a quitclaim deed purporting to transfer DeBerry Farm to Michael. Missing from the 1992 quitclaim deed from Charles to Michael is Carol's signature. Michael did not

---

[2] Due to the related nature of the parties and identical surnames, this Court will refer to persons by their first name, unless otherwise indicated. No disrespect or familiarity is intended.

[3] All evidence is "[v]iewed in the light most favorable to the judgment," except as necessary to contextualize Michael's arguments. *See **Dumproff v. Driskill**, 376 S.W.3d 680, 684 (Mo. App. S.D. 2012).

intervene in his parents' divorce proceedings to protect his claimed interest in DeBerry Farm.

Charles maintained a romantic relationship with Vena for 20 to 25 years until his death on July 24, 2007, but the two never married. Charles never told Vena that he purported to deed DeBerry Farm to Michael, and she believed Charles owned DeBerry Farm at the time of his divorce. While Charles was not able to "really work" DeBerry Farm, Vena and he would both check on the property, and Michael "helped" Charles with his "farming needs." Richard also worked for Charles since he was 12 years old. Richard's work included putting up a fence on the back side of DeBerry Farm and regularly checking the property with Charles.

Michael used DeBerry Farm after 1992 to cut hay, "hunt, work, fix fence, clear brush, pick mushrooms, pick blackberries, deer hunt[], ride the four wheeler around, [and] whatever [Michael] wanted to do[,]" but Charles always paid the property taxes for DeBerry Farm at the end of the year. At no point from 1992 until 2019 did Michael file any deed claiming ownership over DeBerry Farm.

Within a year after Charles's passing, Michael threatened violence to keep people off DeBerry Farm, and he "placed chains and locked gates" at the property. Michael "would show up and argue with folks wanting to rent the farm to run them off" and "ran off" Richard's brother-in-law, who was hunting. However, Michael never personally told Vena or Richard "to stay off" DeBerry Farm, and he and Richard never had "a conflict or an argument about [Richard] being on the farm[.]"

Richard continued to visit DeBerry Farm at least once every year after Charles's death in 2007, including taking a trip to hunt, and has tried to rent out the property. He

3

would "usually" tell Vena before he was going to do "something at the farm." This included "normal maintenance and care of the land," removing trees from the road to cut a pathway for his truck to reach the entrance to DeBerry Farm, and "put[ting] fence up" by the existing gates for Michael's access. Michael tore that fence down within a week after installation, and he also removed the "no trespassing" signs Richard had put up at the same entrance. Michael put up his own "no trespassing" signs but only at the entrances to his property off T Highway and not on the parcels included in DeBerry Farm.

Vena filed an application to probate Charles's handwritten will (the "Will"), dated September 24, 2004, in the Camden County Court on November 21, 2007. Charles's Will provided:

> 2. To my son Michael Webster
>    To my daughter Elizabeth Miller
>    To my daughter Chesley Gregory
> I leave one dollar $1.00 in United States currency. If any one or all of them contest any part of this Will the $1.00 is to go to charity of diabetes or heart.
>
> 3. All other property is to go to Vena Sue Pentecost upon my death. This includes any land, money, vehicles or anything of value either real or personal with no exceptions unless agreed upon by her.
>
> 4. When Vena Sue Pentecost has no further use for worldly goods on this earth[,] I request that if any part of my estate is left (Charles Edward Webster estate) it shall be divided equally between the 7 people (seven) listed below and no others.

The Will then listed two of Vena's grandchildren and five of Charles's grandchildren. In accordance with the Will, the probate court appointed Vena and Richard as co-personal representatives of the estate.

Though Michael was a listed heir, he did not hire an attorney or file any claims against Charles's estate as probate proceedings continued. Richard and Michael

4

discussed the ownership of DeBerry Farm while they were going through probate and that "the farm was coming to [Vena]." According to Richard, they also discussed the prospect of Michael continuing to remove hay after Charles's passing, and Michael "agreed to pay for [Vena's] half of it and it would go to the estate." They "agreed that [Michael] could use the farm from then on" so long as Vena "would receive half the hay, and that would pay the taxes."

Vena and Richard's July 2008 inventory and March 2010 first amended inventory filed with the probate court each listed DeBerry Farm as included in Charles's estate. Vena and Richard swore by affidavit that the inventories were "a full inventory . . . of all the real and personal property of the decedent[.]"[4] Vena and Richard also filed a notice of their proposed final settlement and distribution of Charles's estate on February 16, 2010. The notice by publication informed all interested individuals that the final settlement and petition for distribution would determine "who are the successors in interest to the personal property of [Charles] and of the extent and character of their interest therein and for distribution of such property[.]" The final settlement noted Charles's estate had $120,000 in real estate, $100,000 of which was attributable to DeBerry Farm.

The probate court approved the final settlement and petition for order of distribution of Charles's assets on April 6, 2010. The final settlement distributed the property to Michael, Vena, and two of Charles's daughters as follows:

---

[4] Each inventory mistakenly refers to a "Recapitulation of Personal Property" when the subsequent recapitulation includes both real and personal property by description and value.

| DISTRIBUTEE | RELATIONSHIP OR ART. OF WILL | INTEREST | PERSONAL PROPERTY TO WHICH ENTITLED |
|---|---|---|---|
| Michael Webster | Son | | $ 1.00 |
| Elizabeth Miller | Daughter | | 1.00 |
| Chesley Gregory | Daughter | | 1.00 |
| Vena Sue Pentecost | Friend | | All other property of the Estate and the following |

described vehicles:

| | |
|---|---|
| 1985 Ford Diesel Pickup Vin#1FDJF3719FKB15028 | $ 500.00 |
| 1976 Dodge Dually Pickup Vin#D27BJ6SS311447 | 500.00 |
| 1975 KW Tractor Vin#1449328 | 1,000.00 |
| 1974 International Truck Vin#259471G35321 | 1,000.00 |
| 1958 Studebaker-vehicle located on Chesley's property *no title information available | 250.00 |
| 1978 Freightliner Vin#CA213151849 | 1,000.00 |

The Court further finds that the decedent owned the following real property at the time of his death, to wit:

[DeBerry Farm and a legal description with a value of $100,000.]

The probate court's order approving the settlement also listed the real properties that it found "the decedent [Charles] owned . . . at the time of his death[.]" The first listed property was DeBerry Farm. The order further stated in closing:

> IT IS FURTHER ORDERED by the Court that all other real and personal property owned by Decedent at that [sic] time of death, subject to any lawful disposition thereof heretofore made, be and the same are hereby assigned, transferred and distributed to and the title thereto vested in the aforesaid heirs at law in the respective proportionate interests as above set forth.

Following the April 6, 2010 order, Vena and Richard executed a co-personal representatives' deed to transfer a "partial description" of DeBerry Farm to Vena. They later filed a correctional co-personal representatives' deed on March 4, 2013, to address DeBerry Farm's legal description, and Vena executed a quitclaim deed on May 18, 2015, to transfer a "partial interest" in DeBerry Farm to herself and Richard as joint tenants with right of survivorship. The "county's office" thereafter issued personal property tax statements to Vena since at least 2019. She would "[t]ry to" pay the property taxes every year.

6

In or about 2019, Michael, through counsel, sent Vena a letter claiming "ownership" of DeBerry Farm. Vena then commenced her suit to quiet title to DeBerry Farm on February 4, 2020. Michael maintained the statute of limitations barred Vena's suit, filed his own counterclaim against Vena alleging he owned DeBerry Farm by adverse possession, and filed a crossclaim against Richard alleging the same. He further asserted his right to DeBerry Farm against his sisters Beth and Chesley Gregory ("Chesley"), Beth's husband David Miller ("David"), and all unknown heirs as third-party defendants. The day before trial, Michael submitted a request for findings of fact and conclusions of law but did not request specific findings on any particular issue.

The parties tried the case in a bench trial on September 16, 2021. At the outset of proceedings, the trial court granted an "interlocutory default judgment" per Rule 74.05(b)[5] in Michael's favor against Richard, Beth, David, and the "unknown heirs" of Charles and Carol. The trial court also dismissed Chesley as a defendant in Vena's quiet title action because she conveyed any interest she might have in DeBerry Farm to Michael by quitclaim deed on August 20, 2019.

After considering the evidence, the trial court issued its Findings of Fact, Conclusions of Law and Judgment (the "Judgment") on January 28, 2022. It determined the 1992 quitclaim deed from Charles to Michael was not valid and rejected Michael's contention he acquired DeBerry Farm through adverse possession. In its Judgment, the trial court: (1) found in Vena's favor and against Michael on her quiet title claim as to DeBerry Farm; (2) denied Vena's count for unjust enrichment against Michael; (3) ruled in Vena's favor and against Michael's counterclaim; and (4) ruled "in favor of all named

---

[5] All rule references are to Missouri Court Rules (2023), unless otherwise indicated.

Defendants and against" Michael on his crossclaim and third-party petition. This appeal follows.

**Standard of Review**

When reviewing a bench-tried case, we "affirm the trial court's determination 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Dumproff*, 376 S.W.3d at 687 (quoting *Watson v. Mense*, 298 S.W.3d 521, 525 (Mo. banc 2009)). "We presume the trial court's judgment is valid, and it is the appellant's burden to show otherwise." *Hurricane Deck Holding Co. v. Spanburg Invs., LLC*, 548 S.W.3d 390, 393 (Mo. App. S.D. 2018). This Court views all evidence and reasonable inferences therefrom in the light most favorable to the judgment, while disregarding all contrary evidence. *Trokey v. R.D.P. Development Group, L.L.C.*, 401 S.W.3d 516, 524 (Mo. App. S.D. 2013). Our analysis defers to the trial court's credibility determinations, including any decision to believe none, part, or all of any witness's testimony. *Id.* "'All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.'" *Id.* (quoting Rule 73.01(c)). Further, "[w]e will affirm the trial court's judgment . . . on any basis supported by the record." *Taney Cnty. Title & Escrow, LLC v. Jensen*, 600 S.W.3d 16, 24-25 (Mo. App. S.D. 2020) (internal quotation marks and citation omitted).

**Analysis**

Michael raises nine separate points on appeal. The crux of each argument is that he acquired DeBerry Farm through adverse possession. For ease and clarity of analysis, we take his points out of order as appropriate.

8

<u>Point I – Vena had Standing and her Quiet Title Claim Was Not Barred by
Section 516.010</u>

In his first point relied on, Michael asserts:

The Circuit Court erred in finding [Vena] had standing (and met the statute of limitations) for her quiet title claim, because, under Missouri law, a proponent of a quiet title action is required to have been "seized or possessed of the premises in question within ten years before the commencement of such action" (§516.010 RSMo.), in that [Vena] was not "seized or possessed" of the [DeBerry] Farm within the requisite time period.

We reject this point because title to and possession of DeBerry Farm transferred to Vena upon Charles's death, and Michael failed to establish that the statute of limitations barred Vena's quiet title suit.

*Applicable Legal Principles*

Actions to quiet title are governed by a ten-year statute of limitations period. *Eckel v. Eckel*, 540 S.W.3d 476, 484 (Mo. App. W.D. 2018).

No action for the recovery of any lands . . . or for the recovery of the possession thereof, shall be commenced . . . unless it appear that the plaintiff . . . or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

Section 516.010.[6] "Thus, for a quiet title action to be timely, it must be filed within ten years of the date the plaintiff, or someone under whom he claims, had possession of, or record title to, the property." *Eckel*, 540 S.W.3d at 484. "[W]here land is vacant or unoccupied by any person the constructive possession is held to have been with the owner of title." *Hooks v. Spies*, 583 S.W.2d 569, 572-73 (Mo. App. E.D. 1979). The

---

[6] All statutory references are to RSMo Cum.Supp. 2022, unless otherwise indicated.

9

owner of record title is presumed to have possession of her land absent contrary evidence. *Id.*

Appellate courts review the legal issue of standing *de novo*. ***Mo. Coal. for Env't v. State***, 579 S.W.3d 924, 926 (Mo. banc 2019). A party has standing, and thus capacity to sue, when she (1) has a personal interest in the litigation that gives her a right of recovery from a threatened or actual injury or (2) a legally cognizable interest in the case's subject matter and a threatened or actual injury. ***Id.***; ***Four Star Enter. Equip., Inc. v. Emps. Mut. Cas. Co.***, 648 S.W.3d 903, 908 (Mo. App. S.D. 2022). We evaluate standing based on the language of the party's petition and undisputed facts and not on the allegation's legitimacy. ***Four Star Enter.***, 648 S.W.3d at 908.

*Discussion*

Michael has conflated standing with a claim being time-barred by the statute of limitations. While some courts have tied standing and statute of limitations together because they both preclude judicial review, others treat them as separate and alternative bases to dismiss proceedings. *Compare* ***Est. of Corbin***, 66 S.W.3d 84, 93-94 (Mo. App. W.D. 2001) (finding appellants' challenge to a trust was time-barred by the statute of limitations "such that they were not interested parties . . . depriving them of standing") *with* ***Est. of Smith***, 660 S.W.3d 666, 669 (Mo. App. S.D. 2023) (noting that the issue of standing was "no longer germane" to later proceedings regarding the statute of limitations); *see also* ***Wilson v. Cramer***, 317 S.W.3d 206, 209 n.5 (Mo. App. W.D. 2010) (stating appellant "would have had no standing to bring his action under the former statute, **or, in the alternative,** he would have been barred by the statute of limitations.") (emphasis added). We find the latter description is more accurate because a party's

10

standing to file suit is based on whether they alleged a rightful interest that entitles them to recovery, "if validated[,]" and this interest may persist even if the claim is untimely. *See Four Star Enter.*, 648 S.W.3d at 908. Because Michael does not argue Vena has no interest in DeBerry Farm's title, other than by reason of statute of limitations, we analyze Point I as an assertion by Michael of an affirmative defense, on which he bore the burden of proof to show Vena's quiet title suit was barred by the statute of limitations in section 516.010. *See Stoner v. Dir. of Revenue*, 358 S.W.3d 514, 518 (Mo. App. W.D. 2011) ("The statute of limitations is an affirmative defense, and the [appellants] bear the burden of proving that it bars the [respondent's] claim.").

A statute of limitations will bar a lawsuit depending on when the cause of action accrued. *Brackney v. Walker*, 629 S.W.3d 834, 839 (Mo. App. S.D. 2021). A cause of action accrues when a plaintiff has notice of an injury or is aware of a legal wrong. *Eckel*, 540 S.W.3d at 486. Section 516.010 requires quiet title actions to be brought within the statutory limitations period of ten years after an allegedly wrongful possession or taking. *Brown v. Pint*, 632 S.W.3d 453, 457 (Mo. App. W.D. 2021). Michael asserted, contrary to the recorded title, "ownership" over DeBerry Farm in or around 2019 when he sent Vena a letter. Vena, at that point, had notice of a legal wrong, and she then commenced her quiet title suit in 2020, well within the ten-year statute of limitations period under section 516.010.

Michael argues Vena's quiet title action accrued "in 1992, or, at the latest, in 2007, thus, causing [Vena's] statute of limitations . . . to expire by 2017." However, Michael acknowledges on appeal that Charles's 1992 quitclaim deed purporting to transfer DeBerry Farm was "void" because Charles and Carol owned it as tenants by the

11

entirety and only Charles signed the deed. *See Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007) ("A deed by only one of two tenants by the entirety conveys nothing."). His brief also admits Charles gained DeBerry Farm in the divorce decree. As a result, and as recognized by the probate court, Charles was the owner of DeBerry Farm at the time of his death in 2007. Vena's claim could not have accrued in 1992, and Vena only acquired DeBerry Farm after probate proceedings ended on April 6, 2010. Vena filed her quiet title action on February 4, 2020, which is less than ten years from when she acquired her interest in DeBerry Farm.

Assuming Vena's claim for DeBerry Farm accrued in 2007 upon Charles's death, she presented sufficient evidence of possession from that time period going forward. Vacant and rural land is constructively possessed by the person holding title. *Hooks*, 583 S.W.2d at 572-73. "'[T]he record title to wild and vacant land raises the presumption that the possession is in the record owner.'" *Cunningham v. Hughes*, 889 S.W.2d 864, 866 (Mo. App. W.D. 1994) (quoting *Brannock v. McHenry*, 158 S.W. 385, 387 (Mo. 1913) (alteration in original)). The evidence showed DeBerry Farm was agricultural land with no home or similar structure, and Vena therefore enjoyed constructive possession once she had recorded title. Vena also took additional actions that demonstrated active possession of property. She regularly checked DeBerry Farm with Charles up until his death. After his death, Richard would "usually" tell Vena before he did "something at the farm," such as maintenance, clearing trees, or putting up fence. Michael agreed Vena "would receive half the hay, and that would pay the taxes." The county sent property tax statements for DeBerry Farm to Vena since 2019, and she has been "[t]ry[ing] to" pay those taxes. Vena took further possessive action by filing a correctional deed on March

12

4, 2013, and a quitclaim deed on May 18, 2015. Vena performed both filings within ten years of her quiet title suit. All of this evidence shows Vena possessed the property as early as 2007 and each year thereafter. Her quiet title action was timely and satisfied the statute of limitations under section 516.010.

Michael asks us to discount Vena's evidence of possession. He believes Vena's actions were too passive to meet "possessed" for purposes of section 516.010. He insists, based on *Eckel*, Vena had to have "seized or possessed" DeBerry Farm within the ten years prior to suit to satisfy the statute of limitations "for *standing* purposes[.]" Citing to *Medley v. Joyce Meyer Ministries, Inc.*, he defines a "possessor" as one "in occupation of the land with intent to control it" and then suggests Vena presented no evidence of occupying or controlling DeBerry Farm. 460 S.W.3d 490, 496 (Mo. App. E.D. 2015). First, Michael is asking us to discount evidence supporting the Judgment, which contravenes our obligation to view all evidence in favor of the trial court's decision. *Trokey*, 401 S.W.3d at 524; Rule 73.01(c). Second, *Eckel* does not refer to standing, and this should have indicated to Michael that he was mistakenly associating standing and statute of limitations. *See* 540 S.W.3d at 484. Third, *Medley* is inapplicable because its discussion of "possessor" was quoting the Restatement (Second) of Torts in a premises liability case. 460 S.W.3d at 496. *Medley* simply does not control here.

Point I is denied.

<u>Points V and VI – Michael Failed to Prove Each Element of his Adverse Possession Claim</u>

Michael's fifth and sixth points contend the trial court erred as follows:

V. The Circuit Court erred in awarding fee simple title of the [DeBerry] Farm to [Vena], and in finding against [Michael], because [Michael] sufficiently proved vested title in his name through adverse possession, in

13

that the Circuit Court did not consider [Michael's] actions from 1992 through 2010, during which time he acquired ownership through adverse possession.

VI. In the alternative to Point V, the Circuit Court erred in awarding fee simple title of the [DeBerry] Farm to [Vena] and in finding against [Michael] because [Michael] sufficiently proved ownership through adverse possession, in that [Michael] met every element of adverse possession for a ten-year period at some point prior to [Vena's] litigation.

We address these points together because they both argue Michael secured ownership through adverse possession, either from 1992 to 2010 or during some other time period. We reject both points because Michael's argument overlooks his burden of proof, and his argument ignores the evidence disputing his adverse possession of DeBerry Farm from December 30, 1992, to the commencement of Vena's quiet title suit in February 2020.

*Applicable Legal Principles*

"A party who seeks to establish title to real property by adverse possession must prove that he possessed the land, and that his possession was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years."

*Empire Dist. Elec. Co. v. Coverdell*, 588 S.W.3d 225, 234 (Mo. App. S.D. 2019) (quoting *Stratford v. Long*, 430 S.W.3d 921, 924 (Mo. App. S.D. 2014)). Failure to prove one of these elements defeats an adverse possession claim. *Underwood v. Hash*, 67 S.W.3d 770, 774 (Mo. App. S.D. 2002). The ten-year period must be consecutive, though it need not immediately precede a quiet title suit. *Coverdell*, 588 S.W.3d at 234.

"Hostile," for purposes of adverse possession, "means a possession antagonistic to the claims of all others, with an intent to occupy as one's own." *Underwood*, 67 S.W.3d at 775. "Actual possession is the present ability to control the land and the intent to exclude others from such control." *Dumproff*, 376 S.W.3d at 688. The "open and notorious" element of adverse possession is met by the claimant "'exercising visible acts

14

of ownership on the disputed property.'" *Tiemann v. Nunn*, 495 S.W.3d 804, 810-11 (Mo. App. E.D. 2016) (quoting *Martens v. White*, 195 S.W.3d 548, 555 (Mo. App. S.D. 2006)). "Exclusive possession" means "'the claimant must hold the land for himself or herself only, and not for another.'" *Lancaster v. Neff*, 75 S.W.3d 767, 774 (Mo. App. W.D. 2002) (quoting *Flowers v. Roberts*, 979 S.W.2d 465, 470 (Mo. App. E.D. 1998)). "Joint possession with the owner is not sufficient to support title by adverse possession." *Lohrmann v. Carter*, 657 S.W.2d 372, 377 (Mo. App. S.D. 1983). "'Stronger evidence of adverse possession is required in the presence of a family relationship than where no such relationship exists.'" *Lancaster*, 75 S.W.3d at 775 (quoting *Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo. App. S.D. 1980)).

"When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility[,]" and "[a] trial court is free to disbelieve any, all, or none of that evidence." *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). "To contest evidence, a party need not present contradictory or contrary evidence[,]" though that is sufficient to contest the evidence. *Id.* A party also "can contest the evidence in many [other] ways, such as by . . . cross-examining a witness, challenging the credibility of a witness, pointing out inconsistencies in evidence, or arguing the meaning of the evidence." *Wooten v. Wentworth Ent. Grp., LLC*, 552 S.W.3d 118, 122 n.4 (Mo. App. S.D. 2018) (internal quotation marks and citation omitted).

When the evidence is contested and:

> "[w]hen the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for

the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it."

*Firmand v. Univ. of Missouri*, 628 S.W.3d 434, 436 (Mo. App. S.D. 2021) (quoting *White*, 321 S.W.3d at 305 (internal quotation marks and citations omitted)).

*Discussion*

Vena contested Michael's evidence of hostile, actual, open and notorious, exclusive, and continuous control over DeBerry Farm for the entire period from Charles's December 30, 1992 quitclaim deed until Vena filed her quiet title suit in February 2020. Vena did this by presenting contrary evidence, cross-examining witnesses, challenging the credibility of witnesses, pointing out inconsistencies in Michael's evidence, and arguing the meaning of Michael's evidence. Vena's contrary evidence included: (1) Vena and Charles never married, but they lived together for many years before Charles's death; (2) Charles and Vena "checked" on DeBerry Farm when living together;[7] (3) Vena believed Charles owned DeBerry Farm when he died; (4) DeBerry Farm was agricultural land with no home; (5) Michael was aware a probate estate was opened for Charles and, in fact, was the person who first provided a copy of Charles's Will to the probate court; (6) an inventory and first amended inventory listed DeBerry Farm as an asset owned by

---

[7] This contrary evidence was confirmed by Michael who testified Charles continued to "utilize" DeBerry Farm "from and after 1992" – "He'd go down there and drive around, check things out, look around." Michael also testified that for "several years" before Charles's death in July 2007, Michael "helped [Charles] out in terms of . . . his farming needs" because Charles had "diabetes real [sic] bad" and "wasn't . . . able to do much." Further, Michael testified Charles may have paid the property taxes on DeBerry Farm after 1992 and before his death – perhaps as a "partial repayment for other stuff that [Michael] did. We'd trade off things." Charles failed to pay the property taxes for DeBerry Farm for 2005 and 2006 before his death, and Michael paid those property taxes late in August 2008 after Charles's death.

16

Charles at his death; (7) Richard checked DeBerry Farm with Charles in the 1990's; (8) in the course of the probate process, Richard and Michael discussed DeBerry Farm – from these conversations, (a) Richard understood Michael "believed [DeBerry Farm] was a part of [Charles's probate] estate," and "knew" DeBerry Farm "was coming to" Vena, and (b) Michael agreed to pay Vena for half the hay from the farm in exchange for use of the farm; (9) after Charles's death, Richard "accessed" DeBerry Farm "at least every year" and "sometimes" "multiple times a year"; (10) Michael never personally told Vena "to stay off" DeBerry Farm and never ran Richard off DeBerry Farm or had "a conflict or an argument [with Richard] about [Richard] being on the farm"; (11) Vena was not capable of building fence in or after 2007, but, generally with Vena's knowledge, Richard put up fence and posted no trespassing signs near an entrance to DeBerry Farm and also removed trees from the road in order to clear a pathway for his truck; and (12) Vena commenced her quiet title suit within one year following Michael's letter to her claiming that he "rightfully owned" DeBerry Farm.

Vena's cross examination included (1) challenging the credibility of Michael's testimony that he never appeared in probate court by pointing out a docket entry to the contrary; (2) confirming with Michael that he never had "any conversations" with Vena or Richard "telling [them] to stay off" DeBerry Farm; and (3) eliciting Michael's testimony that he only posted "no trespassing" signs at entrances off State Highway T on land that he owned and that adjoined DeBerry Farm, and did not post any "no trespassing" signs on DeBerry Farm including on the only portion of DeBerry Farm that could be viewed by the public without first crossing land owned by Michael (i.e., from State Highway T).

The trial court clearly did not believe Michael's evidence of adverse possession and was not convinced to view the evidence in his favor. To the extent the trial court did not specifically find that Michael had not convinced it to view the contested evidence in Michael's favor, that finding and related findings rejecting the contested evidence are "considered as having been found in accordance with the result reached" by the trial court under Rule 73.01(c). In these circumstances, the trial court did not err in denying Michael's claim of adverse possession for any period from 1992 through Vena's commencement of her quiet title suit in February 2020, and it could properly find for Vena on this claim.

Points V and VI are denied.

## Points II, III, and IV – The Trial Court Did Not Err in Quieting Title to DeBerry Farm Based on the Probate Court's Decree

Michael's second, third, and fourth points attack the validity of the trial court's reliance on the probate court's distribution of Charles's estate. He argues as follows:

II. The Circuit Court erred in awarding fee simple title of the [DeBerry] Farm to [Vena] based upon the probate court's Decree in Charles Webster's Estate (and/or based upon Charles Webster's Last Will and Testament) because the probate court did not have jurisdiction to distribute the [DeBerry] Farm (nor was Charles' Will applicable) in that title to the [DeBerry] Farm had vested in Michael Webster by adverse possession prior to Charles Webster's death, divesting Charles Webster of title.

III. In the alternative to Point Relied on II, the Circuit Court erred in awarding fee simple title of the [DeBerry] Farm to [Vena] based upon the probate court's Decree in Charles Webster's Estate because it was void (as to real property) for lack of proper notice, in that the statutorily required notice to the heirs preceding the Decree only referenced the distribution of personal property and did not reference the distribution of real property.

IV. In the alternative to Points II and Points III, the Circuit Court erred in awarding fee simple title of the [DeBerry] Farm to [Vena] based upon the probate court's Decree in the Estate because the Decree stated real property owned by Charles Webster at the time of his death vested in Charles

18

Webster's heirs at law, in that, under Missouri law, [Vena] is not and was not Charles Webster's heir at law.

*Point II – The Trial Court did not Err in Awarding Fee Simple Title*

We deny Michael's second point for the reasons explained above in our discussion of Michael's fifth and sixth points. Michael failed to prove he acquired DeBerry Farm by adverse possession. He had the burden to prove the elements of adverse possession, Vena disputed Michael's evidence, and Michael failed to convince the trial court to view the contested evidence in his favor for any period from December 30, 1992, through Vena's commencement of her quiet title suit in February 2020.

*Point III – The Probate Decree is not Void for Insufficient Notice*

Section 473.587 requires public notice before a court can distribute an estate's assets:

> When an estate is in a condition to be closed before filing his final settlement and petition for distribution, the personal representative shall give, or cause to be given, at least twenty-nine days' notice by publication in the manner provided by section 472.100 stating (1) that he will file final settlement and petition for distribution on a date certain or as continued by the court, and (2) that objections to the final settlement or petition for distribution shall be in writing and filed within twenty days from the date the final settlement is filed.

Notice does not "need [to] be given except as specifically provided for in this [probate] code or as ordered by the court." Section 472.100.1. Except as otherwise required by law, adequate notices may be served by direct delivery, publication in a qualified newspaper, registered or certified mail, ordinary mail, or by any combination of these means. Section 472.100.2(1)-(5).

In this case, Vena and Richard, as co-personal representatives, gave the following notice by publication:

19

NOTICE OF FILING OF FINAL SETTLEMENT AND PETITION FOR
DISTRIBUTION

> You are hereby notified that the undersigned Personal Representatives will file a Final Settlement and Petition for determination of the persons who are the successors in interest to the personal property of the decedent [Charles] . . . and for distribution of such property . . . any objections or exceptions to such Final Settlement or Petition or any item thereof must be in writing and filed within twenty days after the filing of such Final Settlement.

Michael does not dispute this notice was made in a qualified newspaper nor does he claim ignorance of Charles's probate proceedings. Instead, he argues the notice violated section 473.587 only because it indicated the petition for distribution was for personal property, not real property, with the result that the April 6, 2010 order approving the final settlement and petition for distribution was void. We disagree.

Michael's attack on the integrity of probate proceedings from over thirteen years ago is a collateral attack on the probate order that granted title in DeBerry Farm to Vena. A probate court order that does not disclose a lack of jurisdiction is "impervious to collateral attack." *Linville v. Ripley*, 146 S.W.2d 581, 583 (Mo. 1940). As a result, Michael cannot attack an allegedly faulty notice here. The April 6, 2010 probate order is conclusive and cannot be attacked in this Court or any other proceeding. *Bugg v. Rutter*, 466 S.W.3d 596, 602 (Mo. App. W.D. 2015) ("A judgment rendered by a court having jurisdiction of the parties and subject matter . . . is not open to collateral attack in respect of its validity or conclusiveness of the matters adjudicated.") (internal quotation marks and citation omitted). We will not collaterally undermine the probate order "'on account of mere irregularities or errors[.]'" *Id.* (quoting *Barry, Inc. v. Falk*, 217 S.W.3d 317, 320 (Mo. App. W.D. 2007)).

20

Were we to reevaluate the probate proceedings, we note Vena's notice alerted interested parties to the filing of a final settlement and a petition for distribution. Nothing in section 473.587's plain language requires the notice to specify the property or categories of property affected by the final settlement or by the petition for distribution. *See Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995) (instructing statutory words to be read using "their plain and ordinary meaning."). Section 472.100.1 also provides that no notice "need be given except as specifically provided for in this code or as ordered by the court." Michael has not alleged the probate court ordered Vena to provide additional notice beyond what she provided.

Additionally, even assuming Vena's notice was procedurally deficient, appellate review is for prejudice, not mere error. *Coverdell*, 588 S.W.3d at 244. We are not persuaded that Michael was prejudiced by the notice. Vena and Richard's July 2008 inventory and the March 2010 first amended inventory filed with the probate court each listed DeBerry Farm as included in Charles's estate. The final settlement specifically showed "real estate" was part of Charles's probate estate. Michael knew Charles had left a Will because he was the first to file a copy of it with the probate court, and presumably knew the Will left Vena "[a]ll" of Charles's "property" (other than $3 in currency) specifically including "land . . . or anything of value either real or personal." Richard discussed DeBerry Farm with Michael during the probate process with the understanding "the farm was coming to [Vena]." The record reflects Michael knew the probate proceedings could impact his interest in DeBerry Farm such that the allegedly deficient notice could not have been prejudicial.

Michael's third point is denied.

21

In his fourth point, Michael misconstrues and misstates the April 6, 2010 order approving the final settlement and petition for distribution (referred to by Michael as the "Decree" in his points). The relevant portion of the April 6, 2010 order states:

> WHEREFORE, the Court orders that the personal property remaining in the hands of the Personal Representative . . . be distributed as follows:

| DISTRIBUTEE | RELATIONSHIP OR ART. OF WILL | INTEREST | PERSONAL PROPERTY TO WHICH ENTITLED |
|---|---|---|---|
| Michael Webster | Son | | $ 1.00 |
| Elizabeth Miller | Daughter | | 1.00 |
| Chesley Gregory | Daughter | | 1.00 |
| Vena Sue Pentecost | Friend | | All other property of the Estate and the following |

described vehicles:

| | |
|---|---|
| 1985 Ford Diesel Pickup Vin#1FDJF3719FKB15028 | $ 500.00 |
| 1976 Dodge Dually Pickup Vin#D27BJ6SS311447 | 500.00 |
| 1975 KW Tractor Vin#1449328 | 1,000.00 |
| 1974 International Truck Vin#259471G35321 | 1,000.00 |
| 1958 Studebaker-vehicle located on Chesley's property *no title information available | 250.00 |
| 1978 Freightliner Vin#CA213151849 | 1,000.00 |

The Court further finds that the decedent owned the following real property at the time of his death, to wit:

> [DeBerry Farm and a legal description with a value of $100,000]
>
> . . . .
>
> IT IS FURTHER ORDERED by the Court that all other real and personal property owned by Decedent at that [sic] time of death, subject to any lawful disposition thereof heretofore made, be and the same are hereby assigned, transferred and distributed to and the title thereto vested in the aforesaid heirs at law in the respective proportionate interests as above set forth.

Our duty when construing a judgment is to ascertain the trial court's intent. ***Jacobs v. Georgiou***, 922 S.W.2d 765, 769 (Mo. App. E.D. 1996). Further:

> In construing a judgment, a court must examine and consider the language of the judgment in its entirety. The intention of the court must be determined

from all parts of the judgment, and words and clauses are to be construed according to their natural and legal import.

A reviewing court is concerned with the "sense" of the judgment rather than the "abstract force" of its language. The judgment's meaning should be determined in light of the character and object of the proceeding.

*Woodfill v. Shelter Mut. Ins. Co.*, 878 S.W.2d 101, 103-04 (Mo. App. S.D. 1994) (internal citations omitted).

Michael seizes on the "IT IS FURTHER ORDERED" clause ("FO clause") of the April 6, 2010 order to argue that DeBerry Farm "vested in Charles Webster's heirs at law." Michael's interpretation of the order completely overlooks the word "other" in the first line of the FO clause, the language and clear intent of Charles's Will, and the "All other property of the Estate" language promptly followed by the probate court's finding that Charles "owned" DeBerry Farm "at the time of his death[.]"

First, the FO clause clearly is a catch-all or fail-safe clause intended to pick up "all other real and personal property" not previously addressed in the order (i.e., residual property). Michael has not pointed us to any "other property" not previously addressed in the order. Second, the language of Charles's Will left Vena "[a]ll" of Charles's "property" (other than $3 in currency) specifically including "land . . . or anything of value either real or personal." Third, Michael's suggested interpretation completely disregards the language in the order that Vena was entitled to "All other property of the Estate" promptly followed by the probate court's finding that Charles "owned" DeBerry Farm "at the time of his death[.]" This language and finding, taken together, show the probate court understood DeBerry Farm was at issue and intended to address it in the disposition of Charles's estate.

Michael challenges this reading of the April 6, 2010 order based on the argument that the word "PERSONAL" in the heading for the fourth column in the order limits that column to personal property. We disagree based on the order's language in its entirety, Charles's Will, and the character and object of the proceeding. The source and timing of Vena's record title to DeBerry Farm reveals that "PERSONAL" was a clerical error.

Michael acknowledges in his brief that Charles's December 30, 1992 quitclaim deed purporting to transfer DeBerry Farm to him was "void[.]" Michael also acknowledges Charles was awarded DeBerry Farm as his sole property in a divorce decree entered a few months later. These acknowledgements are consistent with well-settled Missouri law and were included in the trial court's Judgment. As a result, and in light of the trial court's denial of Michael's adverse possession claim, Charles owned DeBerry Farm when he died.

Under section 473.260, as relevant in this appeal:

When a person dies, his real and personal property . . . passes to the persons to whom it is devised by his last will . . . ; but it is subject to the possession of the [personal representative] . . . and is chargeable with the expenses of administering the estate, [and] the payment of other claims[.]

In a supervised administration of a decedent's estate, as in this case, section 473.263 provides that the personal representative "has a right to and shall take possession of all the personal property of the decedent[,]" and the court "may order the [personal representative] to take possession of the real estate of the decedent when necessary for the payment of claims or for the preservation thereof."

Under these statutory provisions, "the personal representative of an estate [under a supervised administration, as in this case,] cannot obtain possession of real property in the hands of a devisee for estate administration purposes without a court order." ***Est. of***

24

*Shaw v. McKown*, 222 S.W.3d 289, 294 (Mo. App. W.D. 2007). At the moment of a decedent's death, both title and power of control of real property devolves directly to, and is vested in, the persons to whom the real estate was devised in the decedent's will. *Id.* at 295-96. A devisee has "the legal right to pledge, sell, or insure real property devised to them under the will if [the devisee] could find a party willing to bear the risk of the transaction" and may do so "without waiting for probate." *Id.* at 295 (internal quotation marks and citation omitted). Charles's Will was admitted to probate, ordered to be recorded, and, as Michael points out in his brief, the co-personal representatives were never ordered to take possession of DeBerry Farm. Accordingly, the co-personal representatives were not authorized to distribute any real property in the administration of Charles's probate estate until ordered by the court.

Under section 472.010(9) and (11), "[d]istributee" "denotes those persons who are entitled to the real and personal property of a decedent under his will," and "[e]state" "means the real and personal property of the decedent" as from time to time changed in form, augmented or diminished. In its April 6, 2010 order approving the final settlement and petition for distribution, the probate court designated Charles's distributees under his Will, ordered the distribution of the personal property in the possession of the co-personal representatives to the entitled distributees, and "specifically described" the real property to which each distributee was entitled under Charles's Will. *See* section 473.617.2. Pursuant to section 473.617.4, the order "operates as the final adjudication of the transfer of the right, title and interest of the decedent to the distributees therein designated[.]" "Whenever the decree of final distribution includes real property, a certified copy thereof

25

shall be recorded by the executor or administrator in every county of this state in which any real property distributed by the decree is situated." Section 473.617.5.

The probate court followed these statutes by: (1) ordering the distribution of $1 to Michael and each of his two sisters; and (2) designating Vena as entitled to "[a]ll other property of the Estate," specifically listing and finding that Charles "owned" DeBerry Farm "at the time of his death[.]"

Considering the April 6, 2010 order's language in its entirety according to its natural and legal import, Charles's Will, and the character and object of the probate proceeding, the probate court's clear intention was to designate the distributees who were entitled to Charles's personal *and* real property. The word "PERSONAL" in the heading of the fourth column in the order was a clerical error and does not limit the property described in the fourth column to personal property.

Michael's fourth point is denied.

### Point VII – The Court did not Err in Issuing its Findings of Fact Issues and Conclusions of Law

Michael's seventh point posits the trial court erred by not stating certain findings of fact and conclusions of law. It reads:

> The Circuit Court erred in failing to state findings of fact and conclusions of law as to the elements of [Michael's] adverse possession claim because such findings were specifically requested, in that [Michael] moved for such findings prior to trial.

We find no merit in this claim.

Rule 73.01(c) provides:

> The court may, or if requested by a party shall, include in the opinion findings on the controverted material fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before

26

the introduction of evidence at trial or at such later time as the court may allow.

Well-settled Missouri law further provides:

> In a court-tried case, "it is the parties' duty to specifically request findings of fact and conclusions of law, identifying the issues they wish the court to decide."[] *Hammons v. Ehney*, 924 S.W.2d 843, 849 (Mo. banc 1996). "Merely submitting proposed findings to aid the court does not trigger the court's duty to make findings of fact and law." *Id*.

*Sneil, LLC v. Tybe Learning Center, Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012) (footnote omitted); *see also* *McDermot v. Doner*, 637 S.W.3d 402, 412 (Mo. App. S.D. 2021) (similar statement of rules). Further, a general request for findings of fact and the submission of proposed findings to aid the trial court are insufficient to require the trial court to make specific findings under Rule 73.01(c). *See* *Rocking H Trucking, LLC v. H.B.I.C., LLC*, 427 S.W.3d 891, 894 n.1 (Mo. App. W.D. 2014) ("We are cognizant of the principle that 'even if a request for findings of fact under Rule 73.01 is made, a trial court need not make findings of fact unless the movant clearly and unequivocally specifies the controverted fact issues.' *Berlin v. Pickett*, 100 S.W.3d 163, 167 (Mo. App. W.D. 2003)."); *see also* *McDermot*, 637 S.W.3d at 412 (similar statement of rules).

Michael filed a request for findings of fact and conclusions of law the day before trial began. The entirety of Michael's request read, "Comes now, Michael Webster, by and through counsel, and pursuant to local rule 51.3 provides this written request for findings of fact and conclusions of law." This request provided no direction as to what specific findings of fact or conclusions of law Michael wanted and is thereby insufficient to require the trial court to make specific findings under Rule 73.01(c). Nonetheless, the trial court granted Michael's request and issued 14 pages of findings of fact and conclusions of law in the Judgment. Michael complains the trial court still "did not

27

address 1992-2010, among other contested issues." He provides no authority supporting his claim this omission was a legal error, gives no indication what "other contested issues" were neglected, and cites to no cases in his argument for Point VII at all. Michael refers to "[c]ertain caselaw" but does not tell this Court what he is referencing. The lack of effort in his argument speaks poorly of its analytical value.

The trial court did not fail to comply with Rule 73.01(c) as Michael's general request for findings of fact and conclusions of law did not trigger the trial court's duty to make specific findings of fact and conclusions of law under Rule 73.01(c). Point VII is denied.

### Point VIII – The Trial Court did not Err by Finding Against Michael and in Favor of All Defendants on Michael's Crossclaims and Third-Party Petition

Michael's eighth point relied on contends the trial court erred by denying Michael's crossclaims and third-party petition against all named defendants. It reads:

> The Circuit Court erred in finding against [Michael] and in favor of Richard Pentecost, Beth Miller, David Miller, the unknown heirs, grantees, representatives, successors and assigns of Charles Webster and the unknown heirs, grantees, representatives, successors and assigns of Carol Webster as to [Michael's] crossclaim and counterclaims because those individuals were in default in that each were properly served, yet failed to timely respond as required by Missouri law and in that the allegations of [Michael's] pleadings were thus deemed admitted, sufficiently supporting judgment in [Michael's] favor.

We disagree that Richard and the other named defendants' lack of a response to Michael's crossclaim and third-party petition entitled Michael to a favorable judgment.

Michael answered Vena's title action by asserting a crossclaim against Richard and a third-party petition against Beth, David, and all unknown heirs of Charles and Carol. Both the crossclaim and third-party petition asserted Michael had a superior title to DeBerry Farm by way of adverse possession. Richard, Beth, and David did not

28

respond to Michael's filings.  The trial court subsequently issued an interlocutory default judgment in Michael's favor on his crossclaim and third-party petition at the beginning of trial.  However, the record does not show a motion or other request for entry of a default judgment pursuant to Rule 74.05(a) "upon proof of damages or entitlement to other relief."  The trial court then implicitly rescinded the interlocutory order of default in its Judgment by expressly finding "in favor of all named Defendants" and against Michael.

Though Michael obtained an initial interlocutory default judgment, he did not present "proof of damages or entitlement to other relief" to secure his award.  Michael therefore did not request from the trial court the relief he now seeks in this point, and, as a result, the point is not preserved for appeal.  *See **Brown v. Brown***, 423 S.W.3d 784, 788 (Mo. banc 2014) ("An issue that was never presented to or decided by the trial court is not preserved for appellate review.") (internal quotation marks and citation omitted).

Further, even if Michael had properly pursued and preserved the relief sought in this point, the point still would fail because it overlooks that Rule 74.05 is permissive and not mandatory.  Default judgments are not required even after a court grants an interlocutory order of default.  "After entry of an interlocutory order of default, **a default judgment may be entered**."  Rule 74.05(b) (emphasis added).  This language grants the trial court discretion to not issue a final default judgment after trial.  *See* Rule 74.05(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, upon proof of damages or entitlement to other relief, **a judgment may be entered** against the defaulting party.") (emphasis added).  The permissive nature of Rule 74.05 means "should a defendant appear and state a desire to contest the action, the court may, in the exercise of its

29

discretion, refuse to enter a default." ***Cotleur v. Danziger***, 870 S.W.2d 234, 237, 237 (Mo. banc 1994). Richard appeared as a witness and contested Michel's adverse possession action. The trial court could then rescind the interlocutory order of default against Richard at that point. The trial court was likewise free to rescind the interlocutory order of default against Beth, David, and all unknown heirs after Vena and Richard disputed Michael's claims of adverse possession.

Michael responds that Richard and all other named defendants' failure to formally respond constituted their admission to liability under Michael's crossclaim and third-party petition. True, a defendant admits the allegations contained in a petition once she fails to timely respond. ***Coleman v. Meritt***, 292 S.W.3d 339, 343 (Mo. App. S.D. 2009); Rule 55.09. However, even uncontested evidence never proves a claim until the fact-finder says it does. *M.P. by & through Zipfel v. Trexis One Ins. Corp.*, 652 S.W.3d 685, 691 (Mo. App. S.D. 2022); ***Pennington v. Wilson***, 639 S.W.3d 544, 547 (Mo. App. S.D. 2022). The court could still find against Michael even if Richard and the other named defendants did not dispute his claims.

We additionally note Michael's third-party petition against the named defendants other than Richard is moot. For the reasons already discussed, Vena and Richard have superior claims to DeBerry Farm's title, and Michael failed to prove ownership by adverse possession. Securing a default judgment against the other named defendants would provide Michael no relief. *See **Coleman v. Hartman***, 626 S.W.3d 289, 300 (Mo. App. W.D. 2021) (dismissing one point on appeal as moot after finding respondents acquired property through adverse possession).

Point VIII is denied.

Michael's final point on appeal contends the trial court committed reversible error by refusing to set aside the co-personal representatives' deeds because Vena and Richard had no authority to execute the deeds to DeBerry Farm. Specifically:

> The Circuit Court erred in finding against [Michael] on his Count III to Set Aside Deeds because the individuals who executed the deeds at issue did so without authority in that, under Missouri law, deeds executed without authority are void and meaningless and must be set aside.

The 2010 and 2013 co-personal representatives' deeds purport to transfer at least a portion of DeBerry Farm and the 2015 quitclaim deed purports to transfer at least a portion of DeBerry Farm to Vena and Richard as joint tenants with right of survivorship.[8]

The 2010 co-personal representatives' deed may have been executed without authority as there is no indication that the probate court ordered the co-personal representatives to take possession of DeBerry Farm. In addition, the 2013 co-personal representatives' deed may have been executed without authority because the deed was executed after the co-personal representatives were discharged in June 2010. However, as to these two deeds, Michael fails to show he was prejudiced by the trial court's failure to set the deeds aside. Michael's evidence was contested, and he failed to meet his burden to convince the trial court he had a right to DeBerry Farm. The trial court further found that Vena was the "rightful and lawful" owner of DeBerry Farm, and Michael has

---

[8] We do not hold that there is a discrepancy between the legal description of the property purported to be transferred in these three deeds and the legal description of DeBerry Farm because that issue is not before us, but the legal descriptions in the three deeds do not appear to encompass the entire DeBerry Farm based on the description included in the April 6, 2010 order approving the final settlement and petition for distribution.

failed to demonstrate reversible error in that conclusion.  As a result, the 2010 and 2013 co-personal representatives' deeds did not prejudice Michael even if both were unauthorized.  Our review is for prejudice, not mere error.  ***Coverdell***, 588 S.W.3d at 244.

As to Vena's 2015 quitclaim deed, we again note that the trial court found she was the "rightful and lawful" owner of DeBerry Farm, and Michael failed to demonstrate reversible error in that conclusion.  Vena was authorized to execute a quitclaim deed that purported to transfer at least a portion of a property that she owned.

Point IX is denied.

## **Conclusion**

Finding no merit to any of Michael's nine points relied on, this Court denies them all.  The trial court's Judgment is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS